CARILLI CONSTRUCTION COMPANY *vs.* JOHN BASILE & COMPANY, INC., & others.

Suffolk.   December 6, 1944. — February 28, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Joint Enterprise. Equity Jurisdiction,* Accounting. *Equity Pleading and Practice,* Decree. *Contract,* Construction. *Indemnity. Words,* "Select."

Certain provisions in a decree in a suit in equity in the Superior Court for an accounting and liquidation of a joint venture in construction work were erroneous because they were not supported by facts found in a report made by the trial judge under G. L. (Ter. Ed.) c. 214, § 23, without a report of the evidence.

Under a provision respecting a final accounting in an agreement between the parties to a joint venture in construction work, that the work should cease about a certain date, that after that date, if a certain one of the parties "so requests," a designated office "shall continue to be used until the completion of the work without charge to the joint venture," no part of expense incurred by that party from the continuance of the office after such date was chargeable to the joint venture or to the other party.

Under a provision in an agreement between the parties to a joint venture in construction work, that a certain one of the parties, who had placed all of his equipment at the disposal of the venture, might in final accounting "select $2,000 worth of equipment now held by the joint venture at the invoice cost," such party was not obliged to pay for any portion of equipment so selected.

An agreement for an accounting and liquidation of a joint venture required one of the parties, who had agreed to furnish a release from a certain creditor of the joint venture to the other party and to the venture, to relieve or reimburse the venture and the other party respecting a judgment issuing in, and the expense of defending, legal proceedings brought by such creditor.

A final decree in a suit for an accounting and liquidation of a joint venture should provide for payment of creditors of the venture, whether or not they have brought suit, before providing for division of any balance between the parties to the venture.

In an agreement for an accounting and liquidation of a joint venture and settlement of disputes between the parties thereto, a provision that "there is no known matter remaining in dispute between them and that they ratify the acts of each of the parties on behalf of the joint venture, notice of which has been given to the other," was not effectual as ratifying acts of which either of the parties was unaware.

A final decree in a suit for an accounting and liquidation of a joint venture should dispose of all defendants named and of the books and records of the venture.

A final decree in a suit for an accounting and liquidation of a joint venture should not provide for items of cross payments between the parties to the venture and between each party and the venture, but only for the payment of balances.

BILL IN EQUITY, filed in the Superior Court on October 20, 1943.

The suit was heard by *Morton, J.*

*A. M. MacNeil,* for the plaintiff.

*E. J. Ziegler,* for the defendant John Basile & Company, Inc.

WILKINS, J. The plaintiff and the defendant John Basile & Company, Inc. (hereinafter called the defendant) were associated in a joint venture doing construction work under a written agreement dated June 15, 1942, which was modified by a written agreement dated May 14, 1943, looking to a winding up of their association. The prayers of this bill in equity, in which numerous creditors were originally named as defendants, were for a receivership, the collection of debts, the payment of creditors, an accounting, and the division of the remaining assets fifty-two per cent to the plaintiff and forty-eight per cent to the defendant, as required by the agreement. The controversy in this court chiefly concerns the accounting. The case was heard by a judge, who made a report of "the material facts found by him." G. L. (Ter. Ed.) c. 214, § 23. Both the plaintiff and the defendant appealed from the final decree. The testimony is not reported.

A report of material facts under the statute must contain every fact necessary to support the decree, from the entry of which no fact not expressly found may be implied. *Distasio* v. *Surrette Storage Battery Co.* 316 Mass. 133, 135. The facts so reported must stand except to the extent that they are inferences from subsidiary findings or are inconsistent with each other or with the pleadings. *Turner* v. *Morson,* 316 Mass. 678, 680–681.

1. The plaintiff contends that in numerous respects there are no findings to support the decree.

(a) The decree (paragraph 1) provides that the parties should "transfer the funds in the sum of $252.04 of the joint venture now in the First National Bank of Springfield, Vermont, and the sum of $20 now in the Pilgrim Trust Company of Boston, to the credit of the joint venture account now in The First National Bank of Boston." The findings state that there is $245.90 in the Springfield bank, and that the "final decree will provide that the amount in the Springfield bank shall be transferred to The First National Bank of Boston." This is a sufficient finding to support the decree as to the funds in the Springfield bank. There is, however, no finding as to the Pilgrim Trust Company, and the result is that the provision in the decree respecting such a deposit is erroneous.

(b) The decree (paragraphs 2 and 3) provides that the plaintiff should deposit in the joint venture account in The First National Bank of Boston $630.73, "being a refund of insurance premiums" received by the plaintiff from A. J. Tonry, and $7,076.35 "being the balance remaining in its hands of the check received from the U. S. Housing after payments made" by the plaintiff for the benefit of the joint venture. There is no reference to insurance premiums or to Tonry in the findings. The judge found that the plaintiff "received a check for $38,000 from which payments were made leaving a balance in its hands of $22,576.35," but there is nothing indicating that this was received from "the U. S. Housing," and the amount surely does not identify it. The defendant contends that the finding of the balance in the plaintiff's hands is sufficient to support these orders for payments. We think that this contention cannot prevail, and that the facts do not support the decree in these respects.

(c) The decree (paragraphs 4–7) provides for payments to the defendants Young and Cossaboom with an allowance of $100 for services on behalf of each defendant to his attorney, the defendant Rochefort. The findings show that the defendants Young and Cossaboom were employees who made counterclaim for overtime work, and that these employees and their attorney were entitled to the amounts

payable to them in the decree. We cannot quite say that the findings, although lacking in desirable particularity, are insufficient to show the applicability of the "Fair Labor Standards Act of 1938," U. S. C. (1940 ed.) Title 29, §§ 207, 216.

2. The decree (paragraph 10) provides that out of the joint venture funds on deposit $2,465.61 should be paid to the defendant. The findings are that it was agreed that work would cease on June 30, 1943, or a short time thereafter; that much was done for a considerable time thereafter; that the defendant was thereby subjected to expense to which the plaintiff refused to contribute; and that the "amounts to be accounted for are as follows: $736.65 for salaries and wages from July 15, 1943, to September 29, 1943; $150 for services of an engineer; $470.95 for rent of office, telephone, miscellaneous expenses and for moving; $569 for the rent of equipment for the office made necessary in finishing the work of the joint venture; $539.01 the amount of equipment left over after a division of equipment between the parties in June, 1943; making a total of $2,465.61 for which the plaintiff should account to the defendant." The findings also incorporate by reference the agreement of May 14, 1943, a copy of which was annexed to the bill of complaint and was admitted to be a correct copy in the defendant's answer. The agreement provides: "The Park Square office is to be the office of the joint venture until June 30, 1943. John Basile & Company, Inc. agrees that the total expense to the joint venture of the office for the entire period ending June 30th shall not be more than $100, this will not include however salaries paid to Rochefort or to Cossaboom. After June 30 books and records of the joint venture shall be kept at the Adams Street [Carilli] office, with John Basile & Company, Inc. having full access, and without charge to the joint venture, provided, that if the Springfield job has not been fully completed, then if John Basile & Company, Inc. so requests, the Park Square office shall continue to be used until the completion of the work without charge to the joint venture." We think that this was an agreement that

there would be no expense to the plaintiff or the joint venture for the continuance of the Park Square office after June 30, 1943, and if the items quoted in the findings relate to that office, they are not properly chargeable to the plaintiff, and the expense should be left where it fell, namely, on the defendant which assumed it under the agreement. If the items (or any part of them) do not relate to the said office, we see no reason why the entire cost should be assessed to the plaintiff (as stated in the report of material facts, but not in the decree), which under the agreement of May 14, 1943, is responsible for only fifty-two per cent of the liabilities. This provision in the decree is erroneous.

3. The decree (paragraph 12) provides that the defendant should pay the plaintiff $109.07. The findings were: "In the agreement of May 14, 1943, it is provided in paragraph 4 thereof as follows: 'The Carilli Construction Company shall, in accordance with the terms of Paragraph 20 of the agreement of June 15, 1942 select two thousand (2000) dollars worth of equipment now held by the joint venture at the invoice cost . . . . [Included in such amount shall be such property as is now on hand which was purchased from Sears, Roebuck & Co. The remaining equipment bought and owned by the joint venture shall be distributed between the two corporations at the ratio of fifty-two per cent to the Carilli Construction Company and forty-eight per cent to John Basile & Company, Inc. and each of these corporations shall pay to the joint venture the invoice cost of the property respectively distributed to them.]' In carrying out the joint venture the Carilli Company placed at its disposal all its equipment. Such equipment is subject to serious wear and tear and loss on various jobs on which it is used. The joint venture in two places provided that no charge would be made by the Carilli Company for the use of its equipment. Notwithstanding this, I construe paragraph 20 of the joint venture agreement and paragraph 4 of the agreement of May 14, 1943, as allowing the Carilli Company to select equipment to the amount of $2,000 for which it was not to be obliged

to pay . . . . [The] plaintiff selected equipment to the amount of $2,003.48, but received equipment only to the amount of $1,793.73, the balance remains in the possession of the defendant. The defendant should account for fifty-two per cent of this or $109.07." The agreement of June 15, 1942, is not in the pleadings or findings. On the facts found, the plaintiff is entitled to receive from the joint venture $206.27, the full amount of the difference between $2,000 and $1,793.73. We do not agree with the defendant's contention that the agreement of May 14, 1943, shows that the plaintiff was to pay for this equipment. In other provisions in that agreement the word "purchase" is used. The word "select" seems to have been employed to indicate that as to this part of the equipment there was no "purchase." The provision for payment in paragraph 4 is confined to "property" "distributed," and does not embrace "equipment" the plaintiff was to "select."

4. The decree (paragraph 13) provides that the plaintiff should pay $500 to the defendant for a concrete mixer. The findings show this to be part of the equipment of the joint venture and to be in the possession of the plaintiff "which it offers to buy or sell in the sum of $500. Final decree may provide that the Carilli Company shall pay to Basile Company the sum of $500 and upon such payment title to the concrete mixer shall vest in the Carilli Company." The findings, which are that but one party offered to buy or sell, are insufficient to remove the concrete mixer from the ordinary course of liquidation, and do not support the decree.

5. The findings state that one Buckley recovered a verdict in the amount of $1,485.89 against the joint venture; that the plaintiff, alone defending the action, which was brought for a larger sum, sustained an expense of $1,000 for counsel fees; and that the final decree should provide for payment of both verdict and counsel fees by the joint venture. In fact the decree (paragraph 14) provides only for payment of the fees. By the agreement of May 14, 1943, however, the defendant agreed that Buckley "will make no claim against the parties to the joint venture . . .

for any sums to be paid to him . . . as compensation for services to the joint venture or for expenses incurred in connection with such services," and the defendant agreed to furnish a release from Buckley to the joint venture and to the plaintiff. The decree was in error in charging the counsel fees to the joint venture, thereby imposing fifty-two per cent thereof on the plaintiff. This is the obligation of the defendant, which should reimburse the plaintiff, if the plaintiff has paid, or pay the fees if the plaintiff has not done so. Likewise if a judgment on the verdict has not been paid (and there is nothing in the record to show that there was one or that it has been paid), the decree should also require the defendant to pay the amount thereof with interest. If, however, as stated in the plaintiff's brief, such a judgment was satisfied on execution out of funds of the joint venture, the decree should require the defendant to reimburse the joint venture.

6. The decree (paragraph 15) provides that the plaintiff should pay the defendant $2,041.43 and interest in the amount of $73.60. The finding, which is near the end of the report, is, "In view of the foregoing a decree may be entered determining the indebtedness of the plaintiff to the Basile Company on the cross bill [counterclaim] filed by the latter in the amount of $2,041.43 with interest to be added to the date of entry of decree." We are unable to compute from the "foregoing" findings the basis for the figure of $2,041.43, and counsel have not been able to assist us. Since there must be a new hearing, we do not deem it necessary to do more than to state that this part of the decree does not appear to be supported by the findings.

7. The decree (paragraph 16) provides for payment by the joint venture of $10,000, fifty-two per cent to the plaintiff and forty-eight per cent to the defendant, for the purpose of paying to the United States of America any sum which may be due as a result of renegotiation of contracts. Among the findings it is stated that if this amount should not be paid, "this amount shall be retained until final settlement of that issue." We were informed at the arguments

that subsequent to entry of the decree the United States of America has dropped its claim. This provision should, accordingly, be omitted from the decree.

8. It is provided in the decree (paragraph 17) that $3,500 should be held in the bank until all obligations for materials used on a construction project in Springfield, Vermont, should have been paid, and until a one year maintenance bond of August 1, 1943, should have expired; and that thereafter any funds remaining on deposit should be divided fifty-two per cent to the plaintiff and forty-eight per cent to the defendant. The plaintiff urges that there are numerous unpaid creditors of the joint venture, many apparently on the Vermont project. In addition, the findings state, "Of the amount on deposit as above set forth, $18,000 shall be retained to pay the claim of the Whitcomb Company; $7,000 which is subject to trustee attachment by Bridge Construction Company." There is nothing in the decree on this subject. To the extent that a further hearing shows that there are still unpaid creditors, the decree should be modified so as to provide for payments to such creditors, and if necessary, out of this deposit, should such deposit still be required.

9. The decree (paragraphs 18 and 19) requires the payment forthwith of $4,464.22 and $4,120.81 to the plaintiff and the defendant respectively. We perceive no finding supporting such payments unless it be the finding for distribution of any "surplus" in the joint venture account. But the decree (paragraph 20) also provides for the payment within thirty days of any balance (after complying with its other provisions), fifty-two per cent to the plaintiff and forty-eight per cent to the defendant. The decree following the new hearing should make adequate provision for the payment of creditors of the joint venture, whether or not they have brought suit, before providing for the division of any balance.

10. The report of material facts states: "Almost from the start of the work under the joint venture controversies arose which became so serious that the work thereunder was affected thereby and finally the parties joined in an

earnest and serious attempt to settle all matters of dispute between them. Counsel were retained, many conferences were held and finally the parties, their auditors and bookkeepers and counsel gathered together and adjusted the matters between the parties which resulted in the execution by and between them of an agreement of settlement dated May 14, 1943 . . . . Notwithstanding the determination to adjust all matters between the parties and the execution of the agreement of May 14, 1943, further disputes arose and each party claims that the accounting should involve matters which it was thought were settled and which were attempted to be settled by the agreement in question. This situation . . . calls for an application of the legal principle . . . [in *Loughery* 'v. *Central Trust Co.* 258 Mass. 172, 176]: 'Except where criminal conduct is involved, the law favors settlements of disputes, although some of the parties may have been in the wrong.' . . . [The] plaintiff deposited funds of the joint venture to the amount of $126,826.11 in The First National Bank of Boston subject to withdrawal only by it; the agreement provided that all joint venture funds could be withdrawn only by the signature of both parties thereto. In making disbursements from this fund . . . the plaintiff made payments not for the benefit of the joint venture in the amount of $1,460.58 . . . [These] payments were not brought to the specific attention of the defendant until after the agreement of May 14, 1943, was executed. . . . [All] books, papers, vouchers, and checks were open to inspection of the defendant prior to the execution of that agreement, and, in consequence thereof, I rule as matter of law that this matter was settled by the agreement of May 14, 1943, and, in consequence thereof, that the plaintiff is not required to account therefor."

We think that this ruling is error. The agreement of May 14, 1943, contained the following, "This agreement shall supersede the agreement dated June 15, 1942, executed by the Carilli Construction Company and the John Basile & Company, Inc. insofar as it is inconsistent therewith. Otherwise, said agreement of June 15, 1942, shall

remain in force." As already noted, the latter agreement does not appear in the record. The May 14, 1943, agreement also provided, "The parties acknowledge that there is no known matter remaining in dispute between them and that they ratify the acts of each of the parties on behalf of the joint venture, notice of which has been given to the other." This is expressly not a promise to "ratify" acts of which either of the parties was unaware. Whatever the policy of the law as to settlement of disputes, it does not go so far as to import into a contract a mutual release and discharge of all claims and demands where the language does not permit it. The decree should provide that the plaintiff should account for this sum of $1,460.58.

11. A similar question is presented by the following from the report of material facts: "As part of the settlement resulting in the agreement of May 14, 1943, the Carilli Company received a check for $2,394. The amount arrived at was so reached as a result of conferences between the parties and a demand made by the Carilli Company. This check and demand in connection therewith arose from the fact that salaries of officers of both parties to the joint venture and some of their respective employees were increased by votes of the directors of both corporations. The plaintiff claims, notwithstanding such votes, that the increases merely represented a division of profits of the joint venture and as such division was substantially equal and whereas under the terms of the agreement between them the Carilli Company was to receive fifty-two per cent of the profits and the Basile Company was to receive forty-eight per cent of the profits, a further payment was due to the Carilli Company in the amount of this check. It was so agreed as part of the settlement and the check was signed by both parties to the joint venture. If such were an issue of fact before me I should find that the increases above referred to were for salaries and that, in consequence thereof, the Carilli Company was not entitled to any further payment. Applying the legal principle above quoted, however, I rule that this matter was settled between the parties by the agreement of May 14, 1943,

and the plaintiff need not account for the amount of $2,394."

Whether the decree is correct upon this point we are unable to determine from the findings. Additional findings will be necessary.

12. So far as appears, there has been no decree terminating the suit as to the defendant Basile, against whom no relief was asked (although the plaintiff in its brief suggests that by a sealed instrument which was in evidence but which is not in the record he guaranteed performance of the defendant's undertakings under the agreement of May 14, 1943), and as to the defendants Silverman and Rochefort, who were alleged in the bill of complaint to be creditors of the joint venture. To the extent that there has been no disposition of the suit as to any defendant, appropriate decree should be entered in the Superior Court. Likewise, so far as appears, no action has been taken with reference to books and records of the joint venture under a promise in the agreement of May 14, 1943, which is alleged in the bill of complaint, although not expressly referred to in any prayer.

13. The form of the final decree requires comment. In many instances it calls for payments out of joint venture funds, but does not charge anyone with the duty of making them. The decree should provide that the plaintiff and the defendant should make such payments, and, if possible, the method should be specified. The final decree as entered calls for cross payments between the plaintiff and the defendant and for cross payments between each of the parties and the joint venture. This should be avoided. The respective sums in each debtor and creditor relationship should be offset, and the decree should provide for the payment of balances only.

14. The plaintiff's appeal in so far as it is based upon motions not contained in the record reveals no error.

It follows that the final decree must be reversed, and the case remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*