## Weible v. Zoning Board of Adjustment

*William G. Malkames*, for appellants.

*Roy A. Reabuck*, for appellee.

KOCH, J., April 17, 1961.—Appellants, Fred Weible and May L. Weible, have voiced objection to the application of Dr. Morton Parmet, a practicing dentist, for a zoning permit to erect a split-level dwelling on lots nos. 17 and 19 South Ott Street, City of Allentown, in a "Residence A" zone. The proposed dwelling is to be utilized for residential and professional purposes.

The zoning officer refused a permit on the ground that the proposed building plans provided for an 11-foot exterior side yard. Since the zoning ordinance requires a 15-foot exterior side yard an appeal to the board of adjustment became necessary. The board, after extensive hearings, granted the variance and it is from that action that the Weibles, who reside in the neighborhood of the proposed dwelling, have taken this appeal.

We have reviewed the testimony and the numerous and detailed findings of fact based upon that testimony. We are of the opinion that the board's findings are supported by the testimony and can detect no abuse of discretion in the conclusion that the permit should issue.

The lots in question were originally laid out in a rectangular manner on the Cedarbrook Division and

contained a frontage of 70 feet on Ott Street and a depth along Type Street (unopened) of 120 feet. As a result of the construction of Hamilton Boulevard, the northwest portion of the lots were cut away, thus reducing the frontage on Ott Street to 27.20 feet and the portion along Type Street to 68.32 feet. The depth along the southern boundary remains at 120 feet and the rear of the lot remains at 70 feet. The result is, of course, that presently the tract is irregular in shape or, as the board found, "an irregular shape rectangular lot."

The testimony and findings further indicate that Dr. Parmet's proposed split-level dwelling would contain a frontage along South Ott Street of 49.17 feet and a depth of 34.83 feet along Type Street and 41.83 along the southern boundary line. All set-back requirements would be met except that at the northwest corner of the building a set back of 11 feet is proposed. It must be emphasized that this corner consists only of a small triangle measuring approximately four feet along Type Street and a similar distance along South Ott Street with the result that a total of 16 square feet, including the second and fourth levels, is in violation of the ordinance.

The board concluded, as do we, that the applicant has demonstrated the essentials necessary to establish a variance. These factors are: (1) Unnecessary hardship (more properly called "legal hardship"), and (2) that the proposed use will not be contrary to the public interest: Sylvester v. Pittsburgh Zoning Board of Adjustment, 398 Pa. 216; Kline Zoning Case, 395 Pa. 122. In determining that there is present the element of legal hardship, the board properly held that it must be of a unique nature or peculiar to the land itself: Michener Appeal, 382 Pa. 401. The lots, as a result of the widening of Hamilton Boulevard, became irregular in shape and the conclusion is inescapable

that the use became restricted. This element combined with the minimal variance clearly establishes that the hardship is not of a personal nature: Crawford Zoning Case, 358 Pa. 636.

Appellants urge that Dr. Parmet willingly acquired the tract with full knowledge of its limitations and that, as a result, the hardship is self-induced. We are referred to In re Cresko, 400 Pa. 467, in support of this view. In that case, the Creskos bought the premises with knowledge that it was zoned "General Residence" but with the firm belief that it could be rezoned "Light Industry." A variance was sought to construct a parking lot for a discount house. The board found that the land could be used for residence purposes. The Supreme Court held that to grant the variance would constitute a rezoning. In the case at bar, the applicant is not seeking a rezoning. The grant of his minimal request by the board is supported by Crawford Zoning Case, supra, where it was said, pages 641, 642:

"Exactly *what* the size of a side yard and the size of a rear yard should be . . . is a question which must have been determined arbitrarily by the authorities in the first place, for there is no fixed standard by which it can be infallibly determined that dwelling house side and back yards or a certain size are detrimental to 'public health, safety and general welfare. . . .' "

"The requirement as to the ample side and back yards is based on aesthetic considerations as well as upon considerations of health and safety from fire hazards. Perhaps the aesthetic consideration is the paramount one in a 'B Residence District,' such as the one in which the building in controversy is located. Side yards and back yards of substantial uniformity in size adds materially to the 'good looks' of a residential district. But it is not essential to 'good looks' that *all* of the back yards be of *exactly* the same size, . . ."

We need not dwell at length upon the determination by the board that the neighborhood would not be adversely affected. Appellant, who resides more than 150 feet from the proposed dwelling, has failed to produce evidence which the board might have considered. On the other hand, the applicant offered the testimony of one Joseph Herrity, a qualified realtor, who expressed the view that the proposed $41,500 dwelling would enhance the neighborhood.

The more troublesome question raised by appellant is as follows: Did the zoning board of adjustment commit an error of law in using the aggregate area of several levels of the split-level dwelling as the base for computing the allowable accessory use area?

Section 3 of the Allentown Zoning Ordinance permits certain accessory uses in a residential zone. It is undisputed that Dr. Parmet's profession of dentistry is an accepted accessory use. Section 3(3) provides as follows:

"An accessory use may be conducted in the main building or in an accessory building but shall not occupy more than one-half (½) of the first floor of the main building or its equivalent floor area in other space on the premises. There shall be no commercial display from the street, and no advertising display other than a professional name plate or indentifying sign, not larger than two (2) square feet. And there shall be not more than two (2) paid assistants."

It is understandable that the ordinance fails to define the term "first floor" for the obvious reason that the split-level concept of architecture was not extensively used in 1949 when the ordinance was adopted. We do not deem it essential to undertake to define the term but have no hesitancy in accepting the view that, as applied to the proposed dwelling, the area which is set aside for professional use does not violate the ordinance. Before analyzing the areas of the various

levels, we would observe that the purpose of the limitation in section 3(3) is to preserve the basic principle of residence in residential areas. We believe that the facts as found by the board and the various exhibits amply demonstrate that the building is fundamentally residential in character.

We start with the observation that the plans introduced into evidence show four levels, not four stories.*

Since we embrace the view that the proposed dwelling is designed on the basis of levels and not floors in the architectural sense, we may well adopt the reasoning of the board, page 7, decision of the zoning board of adjustment:

"This exact situation is an allowable one under the Residence 'A' District requirements insofar as use is concerned. The fact that we have before us a split-level home does not alter our opinion. Of the total square feet area in the entire building (three thousand six hundred fifty (3650) square feet, only seven hundred thirty-five (735) square feet will be used for dental office purposes. If we were to eliminate the basement floor area, the total square feet area for the normal living area of a typical home (which in the instant case would include the second, third and fourth levels) would amount to two thousand five hundred sixty (2560) square feet, of which only seven hundred thirty-five (735) square feet will be devoted to a dental office purposes. If just the second and third levels were looked upon as being the first floor of a typical non-split level home, the area devoted to dental office use would again be less than the total area for these two areas.

"In any of these latter suppositions, the area devoted to dental office purposes would be much less than fifty

---

* Section 3 of the ordinance defines a "story" as "that part of a building between any floor and the roof above."

(50%) per cent, as prescribed in the Zoning Ordinance."

Since the record fails to disclose that the decision of the zoning board of adjustment was arbitrary, capricious, unreasonable or a clear violation of positive law we are without power to interfere: Ruch v. Zoning Board of Adjustment, 28 Lehigh 5; Borden Appeal, 369 Pa. 517.

### Order

Now, April 17, 1961, the within appeal is dismissed and the decision of the zoning board of adjustment is affirmed.