AUGUSTA T. CHATER, trustee, *vs.* BOARD OF APPEALS OF
MILTON.

Norfolk.    October 6, 1964. — December 9, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Zoning,* Variance, "Recorded" lot.    *Administrative Matter.    Equity Plead-
ing and Practice,* Zoning appeal.

In a suit in equity under G. L. c. 40A, § 21, by way of appeal from a
decision by a zoning board of appeals denying a variance allowing use
of an undersized lot for a dwelling in a residential zoning district, the
question whether the landowner was entitled under certain provisions
of the zoning by-law so to use the lot and therefore was entitled to a
permit for such use was relevant in a determination of the propriety of
the denial of the variance even though the matter had not come before
the board on an appeal by the landowner under § 13 by reason of his
inability to obtain a permit.    [241–242]

Facts found by a zoning board of appeals and by a judge in a suit in
equity by way of appeal to the Superior Court under G. L. c. 40A,
§ 21, from a decision of the board denying a variance allowing use of
a certain undersized lot for a dwelling in a residential district did not
bring the case within any exception to the principle that there is no
legal right to a variance.    [242–243]

Where a zoning board of appeals ruled that the inability of a landowner
under the zoning by-law to use a lot for any building purpose was not
relevant to the board's determination whether to exercise its discretion
to grant him a variance allowing use of the lot for a building, his
appeal to the Superior Court under G. L. c. 40A, § 21, from a denial
of the variance presented that ruling for review.    [243]

The reasonable implication of a provision of a zoning by-law, that an
undersized lot in a residential district might be used for one dwelling
"if such lot was recorded at the time of the adoption of" the by-law,
"and did not at . . . [that] time . . . adjoin other land of the same
owner available for use in connection with said lot," was that if other
adjacent land of the same owner was available it must be added to the
recorded lot and that that lot as so enlarged could then be used for
a dwelling even though it still was undersized.    [244]

Under a zoning by-law exempting from the minimum area requirement
for dwelling lots in a residential district any lot having less than such
area if it was "recorded" at the time of the adoption of the by-law and
any adjoining land of the same owner available for use in connection
with that lot was added thereto, and defining "lot" as "a single area of
land in one ownership defined by . . . boundary lines . . . on a re-
corded plan," a proposed lot, made up of all of space shown as a

"single area of land . . . defined by . . . boundary lines" on a plan recorded prior to the adoption of the by-law and of areas of the same owner adjacent thereto abandoned as private ways, was within the exemption of the zoning by-law [244]; but another proposed lot, made up of only a part of space similarly shown on the same recorded plan and of an area of the same owner adjacent thereto abandoned as a private way, was not within the exemption.   [244–245]

Inability of the owner of an isolated lot of land in a residential zoning district to make use of the lot for dwelling purposes because its area was less than the minimum area required by the town's zoning by-law was a relevant circumstance to be considered by the zoning board of appeals on the issue of hardship in dealing with his application for a variance under G. L. c. 40A, § 15 (3), allowing such use.   [245]

Respecting a proposed lot in a residential district of a town having less than the minimum area required for its use for a dwelling by the zoning by-law, the facts that the lot was made up of part of space originally shown as a lot on a recorded plan and of an adjacent area of the same owner abandoned as a private way, that such space in its entirety, with the adjacent area, could have been used for a dwelling under a certain exemption in the by-law but that the proposed lot was not within the exemption because it included only part of such space, and could not be used at all for dwelling purposes in conformity to the by-law, and that most of the dwelling lots in the vicinity of the proposed lot contained an area less than the area required by the by-law, would have warranted findings within G. L. c. 40A, § 15 (3), of "substantial hardship" "owing to conditions especially affecting . . . [the proposed lot] but not affecting generally the zoning district in which it . . . [was] located" and that a variance allowing its use for a dwelling could have been granted "without substantial detriment to the public good and without . . . substantially derogating from the intent or purpose of" the by-law.   [245–246]

The mere possibility that the owner of land adjoining a lot of another owner not containing the area required by the zoning by-law of the town for its use for a dwelling might purchase the lot would not be a relevant circumstance for consideration by the zoning board of appeals upon an application by the owner of the lot for a variance under G. L. c. 40A, § 15 (3), allowing its use for a dwelling.   [246]

An owner of a parcel of residential land having an area greater than the minimum area required by the town's zoning by-law for use of land for dwelling purposes suffered no hardship within G. L. c. 40A, § 15 (3), in that he could not, in conformity to the by-law, divide the parcel into two lots, each having an area less than that required, and erect a dwelling on each lot.   [246]

BILL IN EQUITY filed in the Superior Court on February 13, 1963.

The suit was heard by *Brogna,* J.

*Robert D. O'Leary* for the plaintiff.

*John J. Murray,* Town Counsel, for the defendant.

WHITTEMORE, J.   These appeals by the plaintiff and the
defendant from the final decree of the Superior Court in a
suit under G. L. c. 40A, § 21, present issues as to the use of
land in Milton that was not shown as divided into building
lots on any plan recorded at the time of the adoption of the
town's zoning by-law in 1938.   The by-law placed the area
in a Residence B district with the requirement of 20,000
square feet for each lot.

Sketch from Plan of January, 1897 showing superimposed lots proposed by Plan of August 3, 1962.

The land was shown as divided into four lots on a plan filed with the planning board in 1962 under the Subdivision Control Law. The planning board voted not to approve the plan as the lots were undersized. Thereafter, the plaintiff sought a variance from the board of appeals to permit the use of each lot for a single family dwelling. The variance having been denied, the plaintiff in due course sought review in the Superior Court.

The final decree ruled that there was no error in so much of the decision of the board of appeals as denied a variance as to lots 2 and 3, but annulled that decision so far as it refused a variance for lots 1 and 4. The record includes designated portions of the testimony, some of the exhibits and, as the statutory report of material facts, the judge's findings, rulings and order for decree and his supplemental rulings.

The four lots lie on the southeasterly side of a private way called Harbor View Park. Two public ways cross the private way at right angles. Lot 1 (13,090 square feet) lies to the southwest of Sassamon Avenue. Between that street and Nahanton Avenue are lot 2 (15,400 square feet) and lot 3 (15,400 square feet). Lot 4 (16,216 square feet) lies across the latter street to the northeast. Each lot on the southeast abuts land of other owners, as does lot 1 on the southwest and lot 4 on the northeast.

The land now divided into lots was shown as open park space (parks and private ways) on a plan of January, 1897, recorded in 1901. The plan was of a large development called Harbor View Park that was conveyed to the trustees of Blue Hills Trust Co. in 1899. The accompanying sketch is taken from that plan. The broken lines have been added to superimpose the present four lots and to show a new boundary of the lot northwest of lot 1. Broken letters and figures show legends taken from the 1962 plan. Thus it will be seen that each presently proposed lot includes part of the land originally proposed as parks, as well as part of what was originally indicated as a way to the southeast of the parks. Most of the land originally indicated as a way

to the northwest of the parks has apparently become the present private way, Harbor View Park. The 1897 plan showed no division of the center park into two lots.

The judge found that most of the houses in the vicinity are built on lots containing less than 20,000 square feet, having been built prior to 1938 or on lots then recorded. Lots 2, 3, and 4 are larger than other lots in the vicinity. The judge also found that the plaintiff's land originally shown as a park area was apparently forgotten by the trustee owners. It is now overgrown with trees and shrubbery and has been used for dumping hedge, tree, and grass clippings and by children as a play space. In 1958 the town sought to register the land as belonging to it by adverse possession. The plaintiff was appointed successor trustee on August 22, 1961. The Land Court in 1962 ruled that the town had not sustained its burden of proof.

The ruling of the judge in the Superior Court decreeing a "variance" as to lots 1 and 4 was based on his conclusion that § VI, A, 2 (c), of the zoning by-law is applicable. That provides that notwithstanding the area requirement "one dwelling may be erected on a lot containing less than 20,000 square feet . . . if such lot was recorded at the time of the adoption of this by-law, and did not at the time of such adoption adjoin other land of the same owner available for use in connection with said lot." He noted that there had been no application to the building inspector for a building permit for lots 1 and 4, but found that a permit would have been refused until a determination was made as to the applicability of § VI, A, 2 (c), and, observing that the advertisement had "requested a variance from the terms of" § VI, A, 2 (c) and 5, construed the proceedings as appropriate for making the determination whether lots 1 and 4 were within the exemption set out above.

The final decree directed the issuance of "a variance . . . in order that a single family dwelling may be erected and maintained on both Lot 1 and Lot 4."

The discretionary power of the board under G. L. c. 40A, § 15, to grant variances from the terms of the by-law is, of

course, very different from the power to determine in the appropriate case that an applicant is entitled to a permit under the precise terms of the by-law. The findings below suggest recognition of this and an intention to resolve the issues as though there had been an appeal to the board under c. 40A, § 13 ("appeal by reason of . . . inability to obtain a permit"). The proceedings before the board, however, did not justify this. The board expressly noted that the appeal to it was not from the denial of a permit. It does not appear that the plaintiff at the hearing asked that the board so regard it.[1] Nevertheless, the plaintiff's right to a permit under § VI, A, 2 (c), as will hereafter appear, does have a bearing on the contention of the plaintiff that the board erred in denying her a variance.

The plaintiff recognizes that there is no legal right to a variance (*Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 559–560; *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 161–162) but contends that she is within the exceptions stated in those cases as possibly justifying a decree for a variance. She asserts that the application of the by-law deprives her of any use of her property and that "all the facts presented compelled a finding that each requirement . . . [for a variance] had been satisfied, and the board failed to make any findings to support its exercise of discretion in denying the variance." *Ferrante* case, p. 162. She refers to the cases that bar the unreasonable application of zoning by-laws to particular properties. *Barney & Carey Co.* v. *Milton*, 324 Mass. 440.

---

[1] The decision shows that the applicant did ask the board to exercise its express power under § VI, A, 5, of the by-law to make a special exception for "adjacent lots any of which has less area . . . than required by this section [if] recorded as all in the same ownership at the time this by-law is adopted" provided certain conditions exist in adjoining areas. The decision also shows that the board assumed that the application could be construed as an application for such a permit but found that the 1897 plan showed no lots at all in the plaintiff's land but only roads and open spaces. Section VI, A, 5, would in any case have been applicable only to lots 2 and 3 as lots 1 and 4 are not adjacent to any other lots in the same ownership. We assume that the appeal to the Superior Court raised the issue of the plaintiff's right to a permit from the board of appeals under § VI, A, 5, as to lots 2 and 3, but the plaintiff concedes that the section is inapplicable because lots 2 and 3 could not be found to have been separate lots recorded prior to 1938.

*Gem Properties, Inc.* v. *Board of Appeals of Milton,* 341 Mass. 99. *Jenckes* v. *Building Commr. of Brookline,* 341 Mass. 162. These are not variance cases and they may be relied upon only in an appropriate proceeding. See, e.g., G. L. c. 185, § 1 (j 1/2), and c. 240, § 14A. The *Gem* case involved a permit and the opinion reserved the issue (pp. 102–103) whether the judge could sustain the denial of a variance notwithstanding the hardship seemingly involved in preventing the use of land for any building purpose. See *Sorenti* v. *Board of Appeals of Wellesley,* 345 Mass. 348, 354. See also *County of DuPage* v. *Halkier,* 1 Ill. 2d 491, 495–496.

The facts found by the board and the judge do not bring the case within the exceptions suggested as possible in the *Ferrante* case (see *supra*) and the *Pendergast* case ("an owner . . . denied a variance solely upon a legally untenable ground and . . . [an indication by the board] that except for that ground the variance would have been granted," 331 Mass. 555, 559.

The board, as is shown below, did, however, in effect rule that the inability to use lots 1 and 4 for any building purpose was not relevant in determining whether to exercise its discretion to grant a variance. The appeal to the Superior Court presents that ruling for review.

The board concluded that lots 1 and 4 "apparently constitute non-buildable lots" and lots which are not within the exemption of § VI, A, 2 (c), of the by-law, since they were not recorded in 1938. It deemed these lots no "different from other lots created subsequent to 1938 which happen to have an area of less than 20,000 square feet." The board held that being "non-buildable" was not a condition "especially affecting . . . [such parcels] but not affecting generally the zoning district in which . . . [they are] located" (G. L. c. 40A, § 15). Thus the board, although it made no mention of hardship in this connection, appears to have acted on the premise, in effect a ruling, that inability to use the land for any building purpose was irrelevant in the determination whether to grant a variance.

At the threshold, we must determine whether the board's premise of "non-buildable" lots was right. We hold, for reasons next stated, that § VI, A, 2 (c), is applicable to lot 4, so that nothing in the zoning by-law bars its use for a house lot.

The definition of "lot" in § I includes "a single area of land in one ownership defined by metes, bounds or boundary lines in a recorded deed or on a recorded plan." Lot 4 as now proposed was not shown on the 1897 plan as defined by boundary lines. But lot 4 is made up of a parcel that is shown as a park on the 1897 plan together with parts of the adjacent private ways. That park parcel was a "single area of land . . . defined by . . . boundary lines" on the 1897 plan. Section VI, A, 2 (c), permits one dwelling to be built on each such area as a lot if that area "did not at the time of . . . [the] adoption [of the zoning by-law] adjoin other land of the same owner available for use in connection with said lot." The reasonable implication is that in the event that there is other adjacent land "available for use in connection with said lot," it must be added thereto, so far as needed to bring the lot up to zoning by-law size, and that the lot so enlarged may be used for a dwelling. *Sorenti* v. *Board of Appeals of Wellesley*, 345 Mass. 348, 353. The plaintiff by filing the 1962 plan has, in effect, asserted that parts of the areas adjacent to the park parcel are no longer committed to the original purpose of private way use and hence are available for use with that parcel as a lot. We rule, therefore, that lot 4, inclusive of such areas, is within the exemption of § VI, A, 2 (c), of the zoning by-law.

Lot 1, however, is in different aspect. That lot incorporates only a part of the park parcel shown in the 1897 plan, since some of the parcel has been included in the presently existing private way adjacent to lot 1 on the northwest. See sketch above. Lot 1, unlike lot 4, is therefore not an area "defined by . . . boundary lines . . . on a recorded plan" (the 1897 plan) modified only by the addition of "other land of the same owner available for use in connec-

tion with said lot.'' The board therefore was right in deeming this lot in a residential district a ''non-buildable'' lot.

The board, however, was in error in the ruling that there was no basis permitting it to find that there were conditions especially affecting lot 1 but not generally affecting the zoning district in which lot 1 is located. We think that the board could reasonably have found that the inability to make any use of this lot while in separate ownership constituted a hardship for purposes of a variance. Contrary to the view expressed by the board, there is a basis for finding that the lot is differentiated from ''other lots created subsequent to 1938 which happen to have an area of less than 20,000 square feet.'' Except for the effect of the widening of ''Harbor View Park, a private way,'' lot 1 would have been like lot 4, and § VI, A, 2 (c), would have permitted its use as a building lot without variance from the by-laws' express terms. Indeed, the exemption, as noted in respect of lot 4, would have permitted the use as a building lot of the originally defined, unaugmented park parcel, an area smaller than the presently proposed lot 1. The original setting aside of the area for a park, its eventual availability for building use notwithstanding that action, if it is so available apart from the zoning by-law,[2] and the widening of the adjacent private way so that § VI, A, 2 (c), is inapplicable, are ''conditions . . . especially affecting . . . [such parcel] but not affecting generally the zoning district in which it is located.'' See *Burke* v. *Spring Lake Bd. of Adjustment,* 52 N. J. Super. 498; *Johnson* v. *Moore,* 28 Misc. 2d (N. Y. Sup. Ct.) 7; *Weible* v. *Zoning Bd. of Adjustment,* 25 Pa. D. & C. 2d 74.

---

[2] There is no basis in this record for determining whether any adjoining or nearby owners or their predecessors in title acquired their lots in reliance on the showing of Harbor View Park on the 1897 plan as an open area so as to have present rights in respect of the plaintiff's land. See *Bacon* v. *Onset Bay Grove Assn.* 241 Mass. 417; *Carroll* v. *Hinchley,* 316 Mass. 724. Compare *Hobart* v. *Towle,* 220 Mass. 293. As to possible dedication of the land to public use, the title remaining in the trustees, see *Attorney Gen.* v. *Abbott,* 154 Mass. 323; *Attorney Gen.* v. *Onset Bay Grove Assn.* 221 Mass. 342.

That most of the houses in the vicinity are built on lots smaller than 20,000 square feet suggests the possibility at least that relief could be granted ''without substantial detriment to the public good and without . . . substantially derogating from the intent or purpose of the by-law.''

We hold that the mere possibility, suggested by the judge, of a purchase of lot 1 by the owner of an adjoining lot for the purpose of enlarging such lot would not be a relevant circumstance. Nor does the original intention that the land be a park answer the hardship contention, for the plaintiff may not use the land for anything other than a park unless the land is now free of legal commitment to park purposes. See note 2, *supra.*

It follows, because of the erroneous ruling, related to hardship and special conditions, that underlay the board's exercise of its discretion, the proceedings must be remanded to the board for reconsideration of the application for a variance for lot 1.

There is no basis for a claim that the board erred in denying a variance for lots 2 and 3. Nothing in the zoning by-law bars the use of the area of those lots as one lot for residential building. That the area may not be divided into two lots of course does not require, even if it permits, a finding of hardship under G. L. c. 40A, § 15.

The decree in the Superior Court is reversed. A decree is to enter to the effect that the board was in error in its determination that lot 4 was not within § VI, A, 2 (c), of the zoning by-law and hence not useable for residential building purposes, but that the decision of the board of appeals denying the plaintiff's application for a variance for lot 4, as well as for lots 2 and 3, did not exceed its authority and no modification of its decision to deny a variance as to those lots is required; also that the decision of the board is annulled as to lot 1 and the proceedings are remanded to the board for consideration of the application for a variance for lot 1.

*So ordered.*