HUGH THOMPSON & others[1] vs. EUGENE H. LORDEN, JR.
& others.[2]

Norfolk.   May 6, 1970. — July 1, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Way,* Private: creation, fee of way.  *Easement.  Contempt.*

On the record of proceedings before a judge of the Land Court respecting
land shown on an 1897 plan of a large development in a town, he rea-
sonably concluded, on the basis of references to the ways shown on
the plan in deeds following soon after the plan and in subsequent con-
veyances to the several plaintiffs, that lots owned by certain plaintiffs
extended in fee to the center of the way adjacent to those lots re-
spectively, and that there was appurtenant to each of those lots, and
to two lots owned by other plaintiffs, which did not extend in fee to
the center of adjacent ways, the right to use the way on which each
lot was bounded "for all purposes for which ways . . . are commonly
used in" the town [72, 74]; it was without consequence that some of
the plaintiffs had taken a position in a registration proceeding by the
town prior to the proceedings at bar which was inconsistent with
their claims therein [74–75].

At a hearing in the Land Court of a petition for contempt for violation of
a preliminary injunction in an equity proceeding enjoining the de-
fendant "from excavating, cutting down . . . trees, shrubs or bushes"
upon certain land in dispute, evidence that the defendant, among
other destructive acts, "took an axe and knocked down" a fence on
two sides of a garden laid out by the plaintiffs on that land and
"crushed the shrubbery . . . on both sides of the . . . fence" war-
ranted the judge's finding that such acts had been "committed . . .
for spite" and his conclusions that the injunction had been violated
and that the defendant was guilty of contempt; and the amount of
a fine ordered to be paid to the plaintiffs as damages was not unrea-
sonable.  [75–76]

BILL IN EQUITY filed in the Land Court on June 30, 1965.

---

[1] Mrs. Thompson, Henry C. Hartley and his wife, Charles J. Saraf and his
wife, James M. O'Leary and his wife, Robert A. Panora and his wife, John E.
Rutecki and his wife, and Joseph L. Rutecki.

[2] The other defendants were Mrs. Lorden and the Lordens' immediate
predecessor in title.

Following entry of a preliminary injunction, a petition for contempt was filed by two plaintiffs on August 12, 1965.

The cases were heard by *McPartlin*, J.

*Robert D. O'Leary* for the defendants.

*Morris M. Goldings* for the plaintiffs.

CUTTER, J. The plaintiffs sought by an equity proceeding in the Land Court declaratory and injunctive relief concerning their interests in the land shown as Harbor View Park on an 1897 plan of Harbor View Park in Milton. This is the same general area considered in *Chater* v. *Board of Appeals of Milton*, 348 Mass. 237, which (at 239) shows the pertinent portion of the 1897 plan, including the park itself and the adjacent lots and ways, more fully described in that opinion (240-241). A sketch plan (based on one attached to the final decree in the equity proceeding) of the park and adjoining ways and lots (as the area would exist after the Land Court proceedings) is set out herewith. The Lordens own lots 1, 2, and 3 shown on that sketch plan and shown as (lots 1 to 4) "Harbor View Park" in the 1897 plan, as printed in 348 Mass. at 239. Various plaintiffs (fn. 1) own the adjacent lots on which their names severally appear on the sketch plan.

The plaintiffs alleged in the equity proceeding (see bill as amended) that each of them had purchased his lot on the faith of the general 1897 plan showing a large development, including oval shaped areas marked "Harbor View Park," and many ways and lots nearby; that they expected the oval areas to be maintained as a park forever; and that the Lordens planned to cut down the trees in the park area and to erect a building or buildings there. Jury issues were granted, the answers to which established, so far as these constituted issues of fact, (1) that Harbor View Park was not "intended by the then [1897] owners to remain permanently as park land for the benefit of the other lots shown on . . . [the 1897] plan"; (2) that the plaintiffs did not purchase their lots in reliance on the permanent character of the park; and (3) that the plaintiffs had "waived any rights they might have in the park land." Following receipt of

the jury's answers, the equity proceeding was further tried, together with a petition by the Lordens for registration of the park area free from any encumbrances except a sewer easement.

The Land Court judge made findings, adopted by him as a report of material facts. He concluded (a) that the lots owned by the Thompsons, the Sarafs, the Panoras, the Hartleys, and the O'Learys extend in fee to the center of the way marked (on the attached plan) "Harbor View Park" adjacent to those lots respectively; (b) that there is appurtenant to each of those lots and to the lots of the Ruteckis the right to use the way (thus marked), on which each such lot is bounded, "for all purposes for which ways . . . are commonly used in . . . Milton," such interest to be "subject to the rights of all others entitled to use" such way. A final decree was entered in the equity proceeding declaring the interests of the plaintiffs in accordance with the judge's conclusions. In the registration case, a decision was made (in the same document with the order for a decree in the equity proceeding) that the Lordens were entitled to registration of the park area, subject to the rights of others in, and to use, the ways shown on the plan. The Lordens appeal from the final decree and from certain interlocutory decrees, mentioned below.

1. Upon return of the jury's answers to the framed issues, the judge denied the Lordens' motion that a final decree be entered dismissing the bill. He correctly ruled (a) that the jury issues disposed only of the plaintiffs' possible interest in the park land as such, and (b) that there was a further issue, under the general prayers of the bill, to be heard concerning "the [plaintiffs'] rights . . . in the ways shown on . . . [the] plan, which ways abut the . . . [plaintiffs'] lots." The plaintiffs in their brief concede that they have no interest in the park land. They seek now "only to protect their interests in the ways."

2. The Land Court judge's decision in the registration case (from which no appeal appears to have been claimed) and his findings show that (a) in earlier conveyances of land within the area here under consideration and (b) in the several deeds to (or certificates of title of) the plaintiffs, their lots are described (in terms which are not wholly uniform) as bounded by ways or streets which are shown

on the 1897 plan and on the plan printed herewith. Some deeds expressly refer to rights to use the ways shown on the plan.[3]

The plaintiffs rely on the principle stated in *Casella* v. *Sneierson*, 325 Mass. 85, 89, "that, when a grantor conveys land bounded on a . . . way, he and those claiming under him are estopped to deny the existence of such . . . way, and the right thus acquired by the grantee (an easement of way) is not only coextensive with the land conveyed, but embraces the entire length of the way, as it is then laid out or clearly indicated and prescribed." See *Brassard* v. *Flynn*, 352 Mass. 185, 188–189 (referring to the rule that such a boundary is "presumed to mean the middle of the way"); *Labounty* v. *Vickers*, 352 Mass. 337, 344. See also *Uliasz* v. *Gillette*, 357 Mass. 96, 102–103. Cf. *Rahilly* v. *Addison*, 350 Mass. 660, 662–663; *Deacy* v. *Charles Constr. Co. Inc.* 354 Mass. 675, 679 (no rights in a passageway which "did not bound the property conveyed" and was "not mentioned in the grant"). Cf. also *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350, 353–355; *Goldstein* v. *Beal*, 317 Mass. 750, 755–756; pointing out that, where there has been application of the rule quoted from the *Casella* case, 325 Mass. 85, 89, *supra*, "it will usually appear that the way referred to is in use or actually staked out on the land." The *Goldstein* case (at 755) recognizes that the "purpose and effect of a reference to a plan in a deed is a question of the intention of the parties."

In the present case, there is somewhat meager evidence of actual use or staking out of the more southeasterly way

---

[3] The judge found, on somewhat conflicting testimony, that (a) the area between the park (lot 1) and the Hartley lot is partly covered with bushes and partly cleared so that it can be crossed by pedestrians; (b) the area between the park (lot 2) and the Panora and Saraf lots is partly cleared, is partly lawn, and can be crossed by pedestrians but not by vehicles; and (c) the area between the park (lot 3) and the Thompson lot is cleared for twenty-five to thirty feet and is partly used as a garden. Over this area it "is possible to walk and drive." The judge merely referred to evidence that the Ruteckis had claimed an easement appurtenant to their lots by prescription. There was evidence that in the area (shown on the attached sketch plan as the more northwesterly of the ways marked Harbor View Park) there is a "dirt road" estimated to be thirty feet wide.

marked "Harbor View Park" on the accompanying sketch plan. Some use of that way by the Thompsons, Sarafs, Panoras, and Hartleys does appear. The deeds to them make reference to the way as a boundary and earlier deeds (in the several chains of title) within fifteen years after the 1897 plan [4] give even more explicit indication of an intention to create rights of way in the ways shown on the 1897 plan.

The present record is in some respects obscure. The equity proceeding was tried in part with a registration proceeding in which the Land Court judge had occasion to consider the whole chain of title of the locus, only portions of which are before us. We cannot say that the judge, on the record before us which includes excerpts from oral testimony, could not reasonably reach the conclusions he did reach. There was basis for his viewing references to the ways shown on the 1897 plan (a) in deeds following soon after that plan, and (b) in the more recent conveyances to the several plaintiffs, as intended to provide a fee interest in certain plaintiffs and easements over those ways for the benefit of all the plaintiff's abutting parcels.

3. The Land Court judge's conclusions are not affected by evidence that Thompson and Saraf in 1958 made offers to buy from the town of Milton certain land adjacent to their lots. At that time the town was attempting to register, as its own, the park land (lots 1 to 4 on the 1897 plan, as shown in 348 Mass. 237, 239, and essentially lots 1 to 3 as shown on the accompanying plan). The purpose and scope of the offers were too ambiguous to constitute evidence that the offerors were admitting lack of any then existing property or easement interest in the southeasterly way marked "Harbor View Park." Similarly the somewhat ambiguous

---

[4] See e.g. (a) deed of Talbot and Bartlett to Fisher, recorded February 21, 1901, of many lots, including all the pertinent lots, "together with so much of the fee of the streets shown on the . . . [1897] plan as lies appurtenant to the lots hereby conveyed"; (b) deed of Bartlett to Richardson and Chandler dated July 16, 1901, covering lots, including the Hartley lot, which purports to grant "rights of way . . . and the right in Sassamon [A]venue and Harbor View Park to Randolph [A]venue in common with others entitled . . . as shown on [the 1897] plan"; and (c) deed from Talbot to Sears, dated August 7, 1912, conveying lots including the Thompson and Saraf lots.

answers filed in 1958 by certain of the present plaintiffs (even if they could perhaps be regarded as inconsistent with these plaintiffs' present position), and the defaults entered against other plaintiffs, in that 1958 registration proceeding, are not conclusive in either the present equity proceeding or the now pending registration proceeding. The plaintiffs in 1958 might well have felt that their interests would be served by having the park land registered as belonging to the town, except as to any portion of the ways to which the plaintiffs claimed title.

4. In August, 1965, Thompson filed a contempt petition against the Lordens, asserting that they had violated a preliminary injunction, served in hand on the Lordens on July 20, 1965, enjoining them "from excavating, cutting down . . . trees, shrubs or bushes, . . . [and] carrying on any building operations or preparations therefor" in or upon Harbor View Park as shown on the 1897 plan. Upon this petition, the Land Court judge made findings in part set out below.

Thompson had laid out a garden on land northwest of lot 27, in the area shown as a road on the 1897 plan (and probably partly at least on land claimed by the Thompsons and found in the equity proceeding to belong to them in fee). The garden was fenced in on two sides by a picket fence two feet high. Shrubs were on each side of the fence. Lorden entered the immediate area. He "took an axe and knocked down the . . . fence . . . and threw it to the ground . . . . He . . . crushed the shrubbery . . . on both sides of the . . . fence." He did other destructive acts and urged children standing nearby to take vegetables from the garden.

Lorden (but not his wife) was found in contempt of the temporary injunction, and was ordered to pay to the Thompsons the damages ($400) caused to them by him. There was sufficient evidence of acts, which constituted damage to bushes, and other destructive acts, to warrant the judge's finding that the acts had been "committed . . . for spite," and his conclusion that there had been a violation of the injunction. "One who has disobeyed a decree is in

no position to split hairs. We see nothing . . . unreasonable in . . . the fine" ordered to be paid to the Thompsons. See *Godard* v. *Babson-Dow Mfg. Co.* 319 Mass. 345, 349–350.

5. In the equity proceeding, the interlocutory decrees and the final decrees are affirmed with costs of appeal. In the contempt proceeding, the final decree is affirmed with costs of appeal.

*So ordered.*