76                          14 Mass. App. Ct. 76

Hunters Brook Realty Corp. *v.* Zoning Board of Appeals of Bourne.

HUNTERS BROOK REALTY CORPORATION *vs.* ZONING BOARD OF
APPEALS OF BOURNE.

Barnstable.   April 21, 1982. — June 24, 1982.

Present: GREANEY, CUTTER, & DREBEN, JJ.

*Zoning*, Variance, Lapse of variance.  *Words*, "Lapse," "May," "Shall."

A zoning variance which has lapsed as a result of the holder's failure to
    exercise the rights authorized by it within a year of the grant of the
    variance can only be reestablished by satisfying anew the criteria for
    the grant of a variance set out in G. L. c. 40, § 10.  [80-84]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 24, 1979.

The case was heard by *Keating*, J.

*Robert Sweeney Troy*, Town Counsel, for the defendant.

*Richard C. Anderson* for the plaintiff.

GREANEY, J.  The last paragraph of G. L. c. 40A, § 10, as
amended by St. 1977, c. 829, § 4B, provides that "[i]f the
rights authorized by a variance are not exercised within one
year of the date of grant of such variance they shall lapse,
and may be reestablished only after notice and a new hearing
pursuant to this section." The issue in this case is whether the
holder of a variance which has lapsed must show anew that
he is entitled to the variance in order to reestablish it.  We
conclude that he must, i.e., that the reestablishment of a
lapsed variance requires a new showing which satisfies the
criteria for the grant of a variance set out in § 10.[1]  Accord-

---

[1] Read in its entirety, and as subsequently amended by St. 1977, c. 829,
§ 4B, § 10 provides as follows: "The permit granting authority shall have
the power after public hearing for which notice has been given by publica-
tion and posting as provided in section eleven and by mailing to all parties
in interest to grant upon appeal or upon petition with respect to particular
land or structures a variance from the terms of the applicable ordinance

ingly, we reverse a decision of the Superior Court which held that the reestablishment of a lapsed variance requires only a showing that conditions relating to the grant of the variance have not changed materially since the date of its approval.

The case was presented on a statement of agreed facts and exhibits, from which we draw the following summary. The plaintiff is the owner of 49.33 acres of land located in the town of Bourne. The plaintiff sought to construct on this land an open space community consisting of a mixture of town houses and cluster homes. The parcel, however, is located partly in a district zoned residential and partly in a district zoned for scenic development. On February 15, 1977, the plaintiff filed with the Zoning Board of Appeals of Bourne (board), see G. L. c. 40A, §§ 8, 10, 15, an application for variances from town by-laws governing the intensity of use and dimensions of the parcel.[2] After appropriate

---

or by-law where such permit granting authority specifically finds that owing to circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law. Except where local ordinances or by-laws shall expressly permit variances for use, no variance may authorize a use or activity not otherwise permitted in the district in which the land or structure is located; provided, however, that such variances properly granted prior to January first, nineteen hundred and seventy-six but limited in time, may be extended on the same terms and conditions that were in effect for such variance upon said effective date.

"The permit granting authority may impose conditions, safeguards and limitations both of time and of use, including the continued existence of any particular structures but excluding any condition, safeguards or limitation based upon the continued ownership of the land or structures to which the variance pertains by the applicant, petitioner or any owner.

"If the rights authorized by a variance are not exercised within one year of the date of grant of such variance they shall lapse, and may be reestablished only after notice and a new hearing pursuant to this section."

[2] Under § 1310 of the town zoning by-law, the board consists of five members and two associate members. The five members of the board

notice and hearing, the board granted the requested vari-
ances by decision dated August 9, 1977.

Within the statutory appeal period, the planning board
of Bourne commenced an action in the Barnstable Superior
Court challenging the grant of the variances. The parties
ultimately settled that action, and a "[j]udgment by
[a]greement" entered on June 30, 1978. That judgment
provided (a) that the plaintiff's request to construct 107
units was "deemed denied by withdrawal"; (b) that no new
request for variance of the density requirements would be
made by the plaintiff for a period of two years; (c) that the
variances granted by the board were "upheld"; and (d) that
the plaintiff could proceed to develop the project subject to
certain enumerated requirements.[3] The rights authorized
by the variances were not exercised within one year of the
entry of the judgment.[4] On July 5, 1979, the plaintiff filed
with the board an application which sought to reestablish
the variances pursuant to G. L. c. 40A, § 10. On October 9,
1979, after proper notice and hearing, the board filed a
decision with the town clerk denying that application.[5]

were present at the two public hearings held on the plaintiff's application.
In support of the variances granted, the board's decision stated specific
findings on each of the statutory elements enumerated in G. L. c. 40A,
§ 10. That decision was signed by four members of the board. The fifth
member did not sign the decision. Under the fourth paragraph of G. L.
c. 40A, § 15, the vote of four members was sufficient to grant the variances.

[3] Among other things, these requirements limited development to thirty-
five cluster single houses and sixty multifamily units, and provided for
planning board approval of the site and subdivision plans.

[4] No question has been raised as to the determination of the one-year
period. The parties apparently take the position that the period was tolled
during the pendency of the action brought by the planning board. See
*Belfer* v. *Building Commr. of Boston*, 363 Mass. 439, 444-445 (1973). See
also *Woods* v. *Newton*, 351 Mass. 98, 104 (1966); *Cape Ann Land Dev.
Corp.* v. *Gloucester*, 371 Mass. 19, 23 n.5 (1976); *M. DeMatteo Constr.
Co.* v. *Board of Appeals of Hingham*, 3 Mass. App. Ct. 446, 458 (1975).

[5] The second application was heard by four of the five members who
had heard the original application, and one member who had not partici-
pated in the initial decision. After repeating the findings made in the
original decision, three members voted to reestablish the variances because

14 Mass. App. Ct. 76                                    79

Hunters Brook Realty Corp. v. Zoning Board of Appeals of Bourne.

The plaintiff next commenced an action in the Superior Court seeking to overturn the board's decision. The case was heard on the same record as is before us. The judge filed a memorandum of decision in which he ruled that "at a hearing to reestablish lapsed rights granted by a previous variance, an applicant is not faced with the burden of again proving compliance with the statutory variance criteria set forth in G. L. [c.] 40A, [§] 10." Based on that ruling, he framed the issue before the board as "whether, *since* the granting of the variance, there has been a change in zoning . . . [requirements or] in the nature or character of the area, or whether other significant conditions or circumstances have developed" (emphasis original), and further ruled that "the decision . . . should be based only upon a consideration of such factors." Since the judge found that "[n]o evidence was presented of any such change," he concluded that the board's decision to deny relief was based on "legally untenable grounds" and was "unreasonable and arbitrary." A judgment entered annulling the board's decision as in excess of its authority, and adjudging that "the rights authorized by the variances granted to the plaintiff . . . by [the board's initial] decision . . . are reestablished.[6]

---

that relief would "conform to, and recognize the spirit of [the] [c]ourt [o]rder . . . issued in 1978 in which these same variance[s] were upheld by the court." The fourth member was the one who had not signed the original decision. He voted to deny the plaintiff relief because the "conditions for a variance were not met." The associate member voted to deny relief because "the plan substantially derogated from the intent of the by-law." Under the fourth paragraph of G. L. c. 40A, § 15, two dissenting votes on a five member board are sufficient to deny the relief sought.

[6] After the appeal was docketed in this court, the judge filed an amended memorandum of decision "nunc pro tunc" to the date on which the original judgment was entered, in which he amplified his previous conclusions of law. The judge stated that in ordering the board to grant the relief requested, he had relied upon the possibility briefly discussed in *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 162 (1962) that: "Conceivably a decision of the board might be held to be arbitrary when all the facts presented compelled a finding that each requirement of [the former] § 15 had been satisfied, and the board failed to make any findings to support its exercise of discretion in denying the variance." However, as that opinion goes on to note, "Such a case is not before us." *Ibid.* Further,

The words used in § 10 are to be construed according to their "common and approved usage." See G. L. c. 4, § 6; *Commissioners of Pub. Works* v. *Cities Serv. Oil Co.*, 308 Mass. 349, 360 (1941); *Assessors of Amherst* v. *State Tax Commn.*, 357 Mass. 505, 507 (1970). The operative words of the statute provide that variance rights which are not timely exercised "*shall lapse*, and *may* be reestablished only after notice and a *new hearing pursuant to this section*" (emphasis supplied). The word "shall," used with reference to the lapse, ordinarily connotes an imperative obligation, see *Johnson* v. *District Attorney for the No. Dist.*, 342 Mass. 212, 215 (1961), while the word "may," used with reference to the reestablishment, is customarily a permissive term which imports the existence of discretion, see *Brennan* v. *Election Commrs. of Boston*, 310 Mass. 784, 786 (1942); *Cline* v. *Cline*, 329 Mass. 649, 652 (1953); *Turnpike Amusement Park, Inc.* v. *Licensing Commn. of Cambridge*, 343 Mass. 435, 437 (1962). By ordinary lay definitions, the word "lapse" means "to become void or ineffective," American Heritage Dictionary 737 (1976), or to "lose, forfeit . . . [or] nullify." Websters Third New Intl. Dictionary 1272 (1971). Its legal definition signifies a "termination or failure of a right or privilege through neglect to exercise it within some limit of time, or through failure of some contingency." Black's Law Dictionary 792 (5th ed. 1979). In addition, the word "pursuant" is a "restrictive term" which means "in conformance to or agreement with." *Id.* at 1112. Based on these simple and straightforward definitions, the words used in the last paragraph of § 10, read in context with the rest of the statute, convey the clear impression that

despite this discussion, the *Ferrante* case applied and affirmed the settled rule that the discretion contemplated by the variance power is vested in the board alone, and that a court should not usurp this authority by substituting its judgment for that of the board. See *id.* at 161-162; *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 557-560 (1954). In view of our conclusion that the judgment must be reversed, we need not consider any question raised by the judge's affirmative order that the board grant the relief sought or whether the amended memorandum is properly before us.

variance rights which are not seasonably exercised will automatically become void; that the holder of a lapsed variance who seeks to reestablish his rights must initiate a new proceeding under § 10; that he must therefore make a new showing of the requirements set out in the first paragraph of that statute; and that it is for the board, as before, to decide the matter in the exercise of its discretion. See *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 559-560 (1954). We find nothing in the wording of § 10, or elsewhere in G. L. c. 40A, which logically supports an interpretation like that reached below.

Any doubt in the matter is put to rest by an examination of the statute's legislative history.[7] See *Worcester* v. *Quinn*, 304 Mass. 276, 281 (1939), and cases cited; *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 264 (1982). The new zoning enabling act sought to eliminate problems which had arisen under the old statute by providing "standardized procedures for the administration . . . of municipal zoning laws." St. 1975, c. 808, § 2A. One such problem had been the lack of any provision in the prior G. L. c. 40A for the loss of variance rights by a failure to exercise them, or by a delay in doing so. The Department of Community Affairs (DCA), which had been designated by the Legislature to investigate the need for a comprehensive revision of G. L. c. 40A,[8] and to prepare a proposed revision, see 1970 House Doc. No. 6192; 1972 House Doc. No. 5009 (initial draft report), discussed the importance of this issue in its 1973 report to the House of Representatives. In that report, the DCA sought to curb "the widespread abuse of the variance granting power," see also 1972 House Doc. No. 5009, at 65, through

---

[7] It would have advanced consideration of this case substantially, both here and below, if the parties had investigated and briefed the applicable legislative history, consistent with their duty to acquaint the court with the pertinent law. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[8] The DCA succeeded the Advisory Committee to Study and Report on the Zoning Law appointed by the Legislature in 1967. See Res. 1967, c. 141. The reports of this earlier committee, however, contain nothing which sheds light on the resolution of this case.

"recommendations [which] reflect a common concern and a common approach," and specifically cited the recommended "provisions for lapse of variances" as an example of that approach. 1973 House Doc. No. 6200, at 9. In a chapter entitled "Limitations on Variance Granting Power," the DCA report "concluded that there should be a time limit in which a [holder] can take advantage of a granted variance . . . in order to eliminate to some degree the current confusion regarding status of land within municipalities," and stressed that it was "giving priority" to a change in G. L. c. 40A "to specify conditions under which a variance may lapse." *Id.* at 20. Based on this view, the report recommended legislation to amend the former § 15 (which stated the requirements for the grant of a variance) to provide that "[i]f a use to which a variance is granted is not established on the premises within three years of such granting, the authorization for such variance shall lapse and become void, and may be reestablished only after another public hearing and notice in accordance with . . . [the former § 17]," which stated the procedure therefor. *Id.* at 45.

The DCA report and recommended legislation were referred to the House Committee on Urban Affairs. See 1972 House Doc. No. 6001; 1973 House Doc. Nos. 6035, 7072. That committee ultimately recommended a bill which included a lapse provision virtually identical to that proposed by the DCA, as quoted above, except that the period triggering a lapse was reduced from three years to one year. See 1974 House Doc. No. 2522, at 23 (third interim report). A subsequent version of the bill deleted the words "and become void" from the prior phrase "shall lapse and become void." 1974 House Doc. No. 5864, at 16.[9] That bill also proposed that a lapsed variance be reestablished "only after notice and hearing pursuant to [§§ 7 and 12]" of the pro-

---

[9] As noted above, the ordinary meaning of the word "lapse" is, of itself, "to become void." We therefore attribute no special legislative intent to the deletion of this language beyond the removal of redundant words from the statute.

posed legislation. *Ibid.* Read in light of the specified sections, which correspond substantially to those sections of the present G. L. c. 40A, this revision was somewhat ambiguous. Particularly in view of the language of § 12, the change suggested that individual boards could, through the exercise of their rule making powers, fashion local discretionary standards to govern the reestablishment of a variance, so long as such rules were "not inconsistent with the . . . purposes of [G. L. c. 40A]." *Id.* at 18. The change was retained in several subsequent versions of the bill. See 1974 House Doc. No. 6480, at 15; 1975 House Doc. No. 5457, at 16. Ultimately, however, the reference to §§ 7 and 12 were struck, and the reestablishment of a lapsed variance was tied directly to the procedures regulating the grant of a variance in the present § 10. 1975 House Doc. No. 5600, at 15.[10] The lapse provision was finally enacted in this form by St. 1975, c. 808, § 3. See 1975 House Doc. Nos. 6849, 8060.

It thus appears that the Legislature considered and rejected language which could have left the criteria for reestablishing a lapsed variance open to local definition and control. It chose instead to require uniform regulation of the matter, thereby implementing the "common approach" originally recommended by the DCA, by making reestablishment dependent on the same criteria as required for the grant of any other variance under § 10. See generally *Warren* v. *Zoning Board of Appeals of Amherst*, 383 Mass. 1, 8-9 (1981), and cases cited. Based on this evidence, it seems clear that the reestablishment of a lapsed variance was intended to be predicated on a new showing of the requirements set out in that section.[11]

---

[10] Although the language originally proposed expressly required "another" public hearing and notice, 1973 House Doc. No. 6200; 1974 House Doc. No. 2522, and that word had previously been deleted, 1974 House Doc. No. 5864, we think that the ultimate insertion of language requiring reestablishment "pursuant to this section [§ 10]," 1975 House Doc. No. 5600, had the practical effect of restoring that language to the provision.

[11] The specification of a definite time limit for the use of a variance, upon the expiration of which its holder is required to start anew before the

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360, 364 (1975), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See also *Labor Relations Commn.* v. *Selectmen of Dracut*, 374 Mass. 619, 624 (1978). To accept the construction placed on the statute below would be to disregard these guidelines, and to ignore the fact that the Legislature has chosen a bright line test to settle the question.[12] The two members of the board were not required to state in detail all of the possible factors which might have influenced their decisions. See *Cefalo* v. *Board of Appeal of Boston*, 332 Mass. 178, 181 (1955); *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 162 (1962). We conclude that the board applied the proper legal standard and that its decision, reached in the exercise of its discretion, should not have been annulled.

---

board, can be viewed as consistent with the Legislature's policy of setting time limits on other uses and authorizations arising in connection with land development under or pursuant to zoning and planning laws. See G. L. c. 40A, § 6, as amended by St. 1979, c. 106. See also Healy, Massachusetts Zoning Practice Under the Amended Zoning Enabling Act, 64 Mass.L.Rev. 157, 158-160 (1979).

[12] We therefore pass over the policy reasons which might favor an interpretation like that reached below. Nor need we consider the plaintiff's argument that if the Legislature had intended to relegate holders of lapsed variances to their original position, it would have ended the final sentence of § 10 with the word "lapse." Based on the foregoing discussion, we think the phrase which follows that word was merely intended to make clear that rights under a lapsed variance may, in fact, be reestablished, and to specify the procedure for doing so. Finally, it is unnecessary to review cases from other jurisdictions relied upon below which have reached different results in the absence of statute. Many of these cases are collected and discussed in 3 Rathkopf, Zoning and Planning § 38.06[2] (4th ed. 1981), and 6 Rohan, Zoning and Land Use Controls § 43.03[4][a] (1981).

The judgment is reversed.  A new judgment is to be entered which upholds the decision filed by the board on October 9, 1979.

*So ordered.*