ANTONE P. LOPES *vs.* BOARD OF APPEALS OF FAIRHAVEN
& others.[1]

No. 88-P-958.

Bristol.   June 6, 1989. — September 6, 1989.

Present: GREANEY, C.J., ARMSTRONG, & PERRETTA, JJ.

*Zoning,* Variance; Frontage; Lapse of variance; Board of appeals: decision.
*Res Judicata. Collateral Estoppel. Administrative Law,* Preclusive effect
of decision.

A zoning board of appeals exceeded its authority by granting a new zoning
variance to replace one which had lapsed as a result of the holders'
failure to exercise within one year the rights granted them by the original
variance, where the holders did not satisfy anew the criteria for the grant
of a variance as set out in G. L. c. 40A, § 10. [755-758]

CIVIL ACTION commenced in the Superior Court Department
on October 31, 1984.

The case was heard by *George Jacobs,* J.

*Andrew S. Koczera* for the plaintiff.

*Daniel C. Perry* for Jeffrey Sullivan & another.

ARMSTRONG, J.   In 1981 the Sullivans, as potential buyers
of a residential lot lacking adequate frontage to comply with
the Fairhaven zoning by-law, applied together with the owner
for a zoning variance. This was granted by the board of appeals,
and the board's decision was sustained in the Superior Court
over a challenge by Lopes, who owns an adjacent parcel.
Lopes did not appeal from that judgment.

The Sullivans then purchased the lot, intending to build a
house, but, not knowing of the one-year lapse provision of
G. L. c. 40A, § 10, as amended by St. 1977, c. 829, § 4B,[2]

---

[1] Jeffrey Sullivan, Jeanne Sullivan and Roland N. Sequin.

[2] General Laws c. 40A, § 10, third par., has since been amended (by St. 1984,
c. 195) to allow one six-month extension if applied for within the one-year period.

neglected within the statutory period to apply for a building permit. The upshot was that they found themselves in 1984 applying for a replacement variance to build precisely the same house on the same location of the same lot with the same abutter, Lopes, again objecting.

To this point the narrative is in material respects identical to that in *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne*, 14 Mass. App. Ct. 76 (1982). In *Hunters Brook* the board of appeals denied an application for a replacement variance, and the applicant failed in his contention in court that the board's action should be reversed on grounds of res judicata or collateral estoppel. Here, in contrast, the board of appeals voted in favor of a replacement variance, and the Sullivans, in response to Lopes's appeal, successfully urged at trial that the court's findings and conclusions relative to the identical 1981 variance (i.e., that enforcement of the frontage requirement would involve a substantial hardship, that the variance may be granted without nullifying or substantially derogating from the intent or purpose of the frontage requirement, etc.), should have a preclusive effect in Lopes's present appeal in the absence (which is acknowledged) of changed circumstances. The difference, the Sullivans urged, between this case and *Hunters Brook* is that a board of appeals has discretion to deny a variance even where the statutory conditions for a variance are met, while the reviewing court, in contrast, has no discretion to reverse the grant of a variance if it finds that the board's decision is procedurally proper and that the statutory critera are met. See *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 557-559 (1954); *Bruzzese* v. *Board of Appeals of Hingham*, 343 Mass. 421, 423 (1962). Cf. *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 162 (1962).

The principles of claim preclusion and issue preclusion, however, apply both to administrative boards and to courts. *Almeida* v. *Travelers Ins. Co.*, 383 Mass. 226, 228-231 (1981). *Ranney* v. *Board of Appeals of Nantucket*, 11 Mass. App. Ct. 112, 119 (1981). If the court, in the absence of changed circumstances, is bound by the findings in the earlier litigation,

then so is (or so should be) the board. Thus, the Sullivans must explain the rejection of res judicata in the *Hunters Brook* decision as turning on the supervening discretion that the second board of appeals can exercise even where the statutory criteria are, as matter of law, complied with.

This reading of *Hunters Brook* does not withstand examination of the decision itself, which held that "the reestablishment of a lapsed variance was intended to be predicated on a new showing of the requirements set out in [G. L. c. 40A, § 10]." 14 Mass. App. Ct. at 83. This interpretation of § 10, requiring an applicant for reissuance of a lapsed variance "to start anew before the board," *id.* at 83-84 n.11, is based on a natural reading of the language of the section providing that a variance can be reestablished "only after notice and a new hearing pursuant to this section." G. L. c. 40A, § 10, third par. The application of claim or issue preclusion principles in the event of a lapsed variance would undermine the purpose of the lapse provision: to force the applicant to justify the variance he seeks unassisted by the earlier proceedings.

"Variances," it has been said, "are always in derogation of the zoning system adopted by the town under its lawful powers." *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. at 557. "No person has a legal right to a variance and they are to be granted sparingly." *Guiragossian* v. *Board of Appeals of Watertown*, 21 Mass. App. Ct. 111, 115 (1985), quoting from *Damaskos* v. *Board of Appeal of Boston*, 359 Mass. 55, 61 (1971). The 1975 revision of the variance section of the statewide enabling act was intended, in part, "to curb 'the widespread abuse of the variance granting power,'" *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne*, 14 Mass. App. Ct. at 81, quoting from 1972 House Doc. No. 5009, at 65. The lapse provision, voiding variances not used within a relatively short time period, is an expression of that policy. *Id.* at 81-83. The vehicle by which the policy is achieved is that the applicant must prove anew the existence of each of the statutory conditions for a variance. The application of collateral estoppel principles would directly defeat that policy. The Sullivans are not aided, therefore, by the earlier judicial decision approving the grant of the 1981 variance.

Unassisted by the earlier findings, the variance cannot stand. The Sullivan's lot is pie-shaped, its concave frontage of sixty-two and one-half feet (thirty-seven and one-half feet less than required) being on the curve of a horseshoe-shaped road.[3] The record does not enable us to determine whether, at the time of the conveyance to the Sullivans, their grantor had any building rights at all in his remaining property after the conveyance to Lopes.[4] Whatever the grantor's situation might have been, the Sullivans, having purchased less frontage than that called for by the zoning by-law and less than their grantor could have conveyed, can not now be entitled to a variance. See *Bruzzese* v. *Board of Appeals of Hingham*, 343 Mass. 421, 424 (1962); *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 11 (1981); *Raia* v. *Board of Appeals of N. Reading*, 4 Mass. App. Ct. 318, 322 (1976); *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 804 (1981); *Gordon* v. *Zoning Bd.*

---

[3] The previous owner, Allen, subdivided his larger tract (which fronted on the outside of the curve) into four lots when the frontage requirement was eighty-five feet. Three of the lots were intended to be house lots. The fourth was a crescent-shaped lot separating the three house lots from the existing road. Allen proposed to deed the crescent-shaped lot to the town to widen the road at the curve. That widening would have resulted in each of the three intended house lots (Lopes's, the Sullivans', and a third lot to the west of the Sullivans' lot) having eighty-five feet of frontage on the widened road (at a cost of some front-yard area). The town, however, refused to accept the crescent-shaped parcel. When the Sullivans purchased their intended house lot, they purchased also the center portion of the crescent-shaped lot, resulting in their having sixty-two and one-half feet of frontage on the road. As of the time of the trial in this action, the segment of the crescent in front of Lopes's lot was still held by Allen, and Lopes himself had little or no frontage. The record does not disclose whether Allen still owns the third (western) intended house lot or the segment of the crescent between it and the road. Thus, there may still be room for maneuver to give the Sullivans the requisite frontage. See note 4, *infra*. The present decision, however, is predicated on the plan as presented in the variance application, which envisions the crescent being divided so as to give each of the three intended house lots roughly sixty feet of frontage on the existing road.

[4] Crucial facts not disclosed in the record include: (1) whether Lopes's house was constructed before or after the conveyance to him; (2) whether the frontage requirement at the time of the conveyance to Lopes was eighty-five feet or 100 feet; (3) whether Allen still owned the lot to the west of the Sullivans' lot at the time of his conveyance of the center lot to them.

*of Appeals of Lee*, 22 Mass. App. Ct. 343, 349-350 (1986). *DiCicco* v. *Berwick, ante* 312, 314 (1989). The shape of the lot is not different from that in *Guiragossian* v. *Board of Appeals of Watertown*, 21 Mass. App. Ct. at 115-116. The problem with the lot is not its shape but its lack of adequate frontage. *Id.* at 116. *Gordon* v. *Zoning Bd. of Appeals of Lee*, 22 Mass. App. Ct. at 350-351. *Shafer* v. *Zoning Bd. of Appeals of Scituate*, 24 Mass. App. Ct. 966, 967 (1987). *Karet* v. *Zoning Bd. of Appeals of Worcester, ante* 439, 440 (1989). Compare *Mitchell* v. *Board of Appeals of Revere, post* 1120 (1989). Neither the drainage easement on the western parcel (see note 4, *supra*) nor the assertedly too short common boundary (forty-three feet) can fairly be said to make the combined parcels unusable as a single house lot. Contrast *Sturges* v. *Chilmark*, 380 Mass. 246, 261 (1980) ("Joining two lots which meet only at a point cannot provide greater connected frontage for either lot, nor can it furnish any additional area accessible from one lot to the other for water supply or sewage disposal purposes, for example").

The judgment is reversed, and a new judgment is to be entered declaring that the decision of the board of appeals was in excess of its authority and is annulled.[5]

*So ordered.*

---

[5] This opinion is predicated, as was the decision below, on the assumption that the first variance lapsed so as to necessitate application for a second variance. That assumption, although not questioned by the parties, may be subject to doubt. See *Hogan* v. *Hayes*, 19 Mass. App. Ct. 399, 403-405 (1985) . Presumably the issue could still be raised if the Sullivans were to apply for a building permit. (So far as the record before us indicates, they have not previously done so.)