[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this Court is the appeal of Debra and Steven Foisy, et al (hereinafter "plaintiffs") from a May 3, 1994 decision of the City of Pawtucket Zoning Board of Review (hereinafter "the Board"). In that decision, the Board granted the applicant, Vaillancourt Associates, a dimensional variance.
Jurisdiction of this Court is pursuant to R.I.G.L. 1956 (1988 Reenactment) § 45-24-20.
FACTS AND TRAVEL
The Pawtucket Redevelopment Agency (hereinafter "PRA") is the record property owner of Assessor Lots 41, 46, 58, 59, 60 and 61, located on Branch Street in the City of Pawtucket. Lots 41 and 46 are contiguous and lie on the west side of the street, while Lots 58, 59, 60, and 61 successively abut each other on the east side of the street. On March 26, 1991, Omni Development Corp., representing the PRA, went before the Board to seek relief from side-yard and set-back requirements. (Defendants' Brief, hereinafter "Def. Br.", at 1.). On April 4, 1991, the Board granted a dimensional variance. (Id.).
The PRA was to construct three (3) twenty-seven foot and six inch by sixty foot and nine inch buildings, each of which would consist of three (3) attached, individually owned, single family, wooden-framed "townhouses", referred to as one "building." (Id.
at 1-3). In total, the project provided for the construction of nine (9) dwelling units, with two (2) parking spaces per unit. (Id.). Each building was to be erected over and across two (2) contiguous lots, with each pair of lots totalling over 20,000 square feet in area. (Id.). The middle or interior units would violate the side-yard dimensional requirements since these units would be attached to the outer units. (Id. at 2). From the time the variance was originally granted on April 4, 1991, until April 26, 1994, the date of the second hearing, the PRA ". . . for whatever reason. . ." allowed the variance to lapse. (Tr. at 2).
On April 26, 1994, Louis Vaillancourt Associates, a new developer representing the PRA, went before the Board ". . . trying to reactivate. . ." the lapsed variance. (Id.). At that hearing, the applicant presented evidence regarding the dimensions of the buildings to be constructed and the necessity for a variance relieving the developer of the side-yard requirements imposed by the Pawtucket Zoning Ordinance. (Id.).
Plaintiff, Steven Foisy, resident of Seekonk, Massachusetts and owner of the property located at 48-50 Branch Street, Assessor's Lot 45, appeared at the hearing to object to the proposed buildings, as he had done in 1991 when Omni Development petitioned the Board.
STANDARD OF REVIEW 45-24-20. Appeals to Superior Court
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions;
 (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a Justice of the Superior Court "may not substitute his judgment for that of the zoning board if he conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v.Genovesi, 120 R.I. 501, 388 A.2d 821, 824-825 (1978). "Substantial evidence used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, (R.I. 1981) citingApostolou, 120 R.I. 501, 507, 388 A.2d 821.
STANDING TO APPEAL
The first issue to be addressed by this Court is whether the plaintiffs, Deborah and Steven Foisy, have proper standing to object to the PRA's application for a dimensional variance. The defendants argue that the plaintiffs are not "aggrieved persons" under the meaning of the state's Zoning Enabling Act or under the Pawtucket Zoning Ordinance, and thus are not entitled to appeal the Board's decision.
As noted above, R.I.G.L. § 45-24-20 delineates this Court's scope of review as well as the right of "any person or persons jointly or severally aggrieved by a decision of the board [to] appeal to the superior court for review of said board's decision." R.I.G.L. § 45-24-20. Concomitantly, § 31-71 of the Pawtucket Zoning Ordinance permits any person to appeal any decision of the board or its officers, by which said person has been aggrieved.
The defendants contend that while the plaintiffs' property is close to the property on Branch Street which is the subject of the variance, they are not aggrieved because the variance in the case at bar is for dimensional relief and not for a change in use. (Def. Br. at 4). The defendants cite a string of cases wherein the appellants alleged that they were aggrieved by the board's decision to grant the applicant a use variance. (See Def. Br. at 4, citing Flynn v. Pawtucket Zoning Board of Review,73 A.2d 808, 810 (R.I. 1950); DiIorio v. Zoning Board of EastProvidence, 205 A.2d 350 (R.I. 1969); Bastedo v. Zoning Boardof Review, 153 A.2d 531 (R.I. 1959)). Our Supreme Court found the objectors in these cases to be "aggrieved persons." Id.
However, the defendants argue that, unlike the appellants in the aforementioned cases, the plaintiffs in the case at bar are not personally aggrieved by the Board's decision because, here, the relief sought is a dimensional variance. Furthermore, the defendants argue that because the plaintiffs reside in Seekonk, Massachusetts, and merely own the property on 48-50 Branch Street for rental purposes, they are not injured by the Board's decision and thus are not aggrieved in the personal sense by the Board's decision. (Def. Br. at 4.).
Upon close examination of the record, this Court finds that the plaintiffs have been aggrieved in the personal sense by the Board's decision and, therefore, have standing to appeal its decision. The Pawtucket Zoning Ordinance, § 31-71(e), explicitly states that all the property owners within 100 feet of the subject property are entitled to ten (10) days written notice of hearing of an appeal. The plaintiffs are property-owners of 48-50 Branch Street which abut Assessor's lots 41 and 46, owned by the defendant-PRA. (Tr. at 24.). Mr. Foisy testified that his house is a three-family, vinyl-sided building that is in "real good shape." (Id. at 26). In addition, the plaintiff stated that in his opinion a row of three singly-owned, attached units would "lower the grade of the houses . . ." in the neighborhood. (Id.)
While depreciation in the worth of one's property is a factor in showing one is "aggrieved" for purposes of establishing standing, our Supreme Court has made abundantly clear that proximity of one's property to the applicant's is the touchstone of `aggrievement.' In Gaglione v. DiMuro, the Court allowed an appellant standing to appeal the Board's decision even though his property did not abut the property in question, but was contained within a 400 foot radius of the subject property. Gaglione v.DiMuro, 478 A.2d 573, (R.I. 1984). Clearly, the appellants in the instant action, as owners of the abutting property, fall well within this definition of aggrieved person.
Accordingly, this Court finds that the plaintiffs are entitled to appeal the Board's decision.
ADMINISTRATIVE FINALITY
Additionally, the defendants contend that their seeking a reissuance should not be barred by the doctrine of administrative finality, as their case is dissimilar to the case of Burke v.Zoning Board of Review, wherein the Court held that the doctrine precluded the applicant's second attempt at the same relief. (Def. Br. at 5). The Board in that case had denied the applicant's request for relief in the first hearing. Burke v.Zoning Board of Review, 238 A.2d at 50. The applicant, therefore, was required in the second hearing to make a showing of `substantial change in circumstances' in the time intervening between the two applications in order to merit the Board's reversal of its prior decision. Id. The defendants argue that, unlike the applicants in Burke, they need not show a change in circumstances since they seek a "reactivation" of the previously granted variance and not a reapplication for relief once denied. (Def. Br. at 6).
In contending that they need not prove a `substantial change in circumstances', the defendants in effect are seeking to be held to a lesser burden of proof based on the fact that they were once granted relief. Careful consideration of the case law and the Pawtucket Zoning Ordinance reveals that the doctrine of administrative finality in no way alters or lessens the defendant's burden of proving all essential elements necessary to receive a variance. The Pawtucket Zoning Ordinance, 31-85, reads:
Upon granting a variance the Zoning Board of Review shall prescribe a time limit not exceeding six (6) months within which the action for which the variance is required shall be begun. The board shall likewise prescribe a time limit not exceeding two years within which the action for which the variance is required shall be completed. These limits may be extended for a period not exceeding 6 months by vote of the board following a public hearing held at a regular meeting of the board.
It is clear from this language that after two years, a variance, if unexercised, lapses. Before the Board, the defendant state that "due to an unfortunate passage of time," The PRA allowed the 1991 variance to lapse. (Tr. at 4). The motive for allowing a variance to lapse is not relevant to one's burden of proof in a second hearing for the same relief. While an applicant reapplying for the same relief granted some three and one-half years earlier and now lapsed need not prove a `substantial change in circumstances', said applicant must meet the required burden of proof on every element of the relief requested. Accordingly, this Court finds that the doctrine of administrative finality does not bar the plaintiffs' appeal. See infra at 7, Lopes v. Board of Appealsof Fair Haven, 27 Mass. App. 754, 543 N.E.2d 421 (1989), review denied 406 Mass. 1103, 548 N.E.2d 887.
COLLATERAL ESTOPPEL
The defendants next argue that the doctrine of collateral estoppel bars the plaintiffs from bringing the instant appeal based on the fact that the dimensional variance sought and granted in 1991 pertained to the "very same parcels of land and . . . the same type of dwelling unit construction." (Def. Br. at 6). Moreover, the defendants urge that because the plaintiffs were present at and objected to the variance at that time, they should be precluded from appealing the Board's decision. (Id.).
This Court finds the defendants' argument to be without merit. As noted above, the Pawtucket Town Council has drafted § 31-85 to address specifically the issue of a lapsed variance. If a variance has lapsed, the property owner is entitled to a public hearing on the issue again. Secondly, an applicant seeking a reactivation of a lapsed variance may not use collateral estoppel to preclude an appellant from objecting a second time around.Lopes v. Bd. of Appeals of Fair Haven, 27 Mass. App. 754,543 N.E.2d 421, 423 (1989).
The facts in Lopes are remarkably similar to those in the case at bar and are, therefore, illustrative. In Lopes, the applicants applied to the zoning board for relief from frontage requirements. Id. at 422. Relief from said requirements had been granted three years earlier and had lapsed one year after the Board's grant, pursuant to M.G.L.c. 40A, § 10, as amended by St. 1977, c. 829 § 4B. Id. at 421, 422. The applicants there, like the applicants in the instant case, were faced by abutting property owners in the first hearing for relief, and again in the second. Id. at 423. And, similar to the defendants here, the applicants in Lopes attempted to raise the doctrines of resjudicata and collateral estoppel to prevent the appellants from `relitigating' the previously decided variance. Id.
The Supreme Judicial Court found "`the reestablishment of a lapsed variance was intended to be predicated on a newshowing of requirements set out in G.L.c. 40A § 10.'" Lopes
citing Hunters Brooks, 14 Mass. App. Ct. at 83. (emphasis added). Thus, once a variance has lapsed, an applicant going before the Board seeking to `reactivate' it must ". . . start anew before the board . . ." and ". . . prove anew the existence of each of the statutory conditions for a variance." Id. at 424. The Court enunciated the reasoning for its rejection of the principles of res judicata and collateral estoppel as bars to the objectors' appeal. Limiting the period in which a variance is valid and requiring an applicant of a lapsed variance to reprove every element proscribed by the ordinance "`curb[s] the widespread abuse of the variance granting power.'" Lopes,
quoting from Hunters Brook, 14 Mass. App. Ct. at 81,436 N.E.2d 978, quoting from 1972 House Doc. No. 5009, at 65.
The same reasoning applies in the case before this Court. Permitting the defendants to present their case to the Board again for the purpose of "reactivating" a lapsed variance while denying the plaintiffs the opportunity to be heard again would violate the Pawtucket Zoning Ordinance and § 45-24-20; it would also defeat the purpose of having a time limit on the variance in the first place. Were an applicant seeking a reissuance of a lapsed variance allowed to rely on the Board's prior grant of that variance in order to bar an appeal, the second hearing would amount to nothing more than a mere rubber-stamping of the previously approved variance. Moreover, this theory implies that the applicant would be benefitted indefinitely by the original grant of relief and, at any time after the variance has lapsed, would be entitled to come before the Board with the added advantage of the prior decision. Clearly, the imposition of a finite time limit of two years on the validity of variances, set out in § 31-85 of the Pawtucket Zoning Ordinance, was not intended to have this deleterious effect on grants by the Board.
Accordingly, this Court finds that the doctrine of collateral estoppel has no preclusive effect on the plaintiffs' appeal.
JURISDICTION OF THE BOARD
It is axiomatic that a zoning board, like any quasi-judicial entity, must have proper jurisdiction over a case before it may grant relief. Slawson v. Zoning Board of Review of Barrington,100 R.I. 485, 217 A.2d 92 (1966). As our Supreme Court has consistently found, ". . . boards of review are not vested with jurisdiction to subdivide land . . . nor can they derive such jurisdiction by virtue of the ordinances adopted by the municipal legislatures pursuant to that enabling act." Slawson at 95;Noonan v. Zoning Board of Review, 90 R.I. 466, 159 A.2d 606
(1960). For the purpose of subdividing land into lots, it is incumbent upon town legislatures to create planning boards. (Id.). Indeed, the Pawtucket City Council created this vehicle when it ". . . empowered by Ordinance, Chapter 2318 on August 12, 1993 the City Planning Commission to adopt, modify and amend regulations and rules governing land development and subdivision projects within the municipality . . .". Section I. Article B. of subdivision Review Regulations of Pawtucket Rhode Island.
Nowhere in the hearing transcript nor in the record is there evidence indicating that the defendants sought or received subdivision approval prior to the hearing before the Board in 1994. The defendants missed this essential step in the process of creating individual lots for each townhouse. In the hearing on April 26, 1994, Mr. Louis Vaillancourt and Mr. Kevin Shea, as representatives of the PRA, presented evidence of the PRA's proposal to erect one building on each pair of contiguous lots, comprised of three attached, singly-owned townhouse units. The designated zone for this proposed structure is "RM" or residential multi-family. Throughout the hearing, the defendants referred to the lots pertaining to each unit as "single family lots" and as "accessor's [sic] lots." (Tr. at 15, 8). In addition, because the townhouses are attached, the defendants stated that the lots would be treated as having "zero lot lines." (Tr. at 15). Indeed, the record reflects the Board's inquiry into the treatment of the lot lines, but at no time did the Board determine that the defendants received subdivision approval. Accordingly, based on the record, this Court finds that the Board lacked jurisdiction to grant the requested relief.
It was not until November 3, 1994, well after this appeal was underway, that the parties stipulated to and filed with this Court the minutes of the Pawtucket Planning Commission's meeting, which indicate that the Commission conditionally approved the drawing of three lots on each pair of the defendant's land on Branch Street. According to the minutes, the Commission gave ". . . conditional approval to the proposed subdivision activity subject to providing as-built drawings of the foundation with lot lines shown." (Planning Commission Minutes of May 26, 1994). In so stipulating, the plaintiffs withdrew the allegation set out in their complaint that the Board exceeded its authority by granting relief without proper jurisdiction to do so.
The Planning Commission's meeting was held on May 26, 1994. The decision of the Board granting a "reactivation" of the dimensional variance was rendered on April 26, 1994. (SeeBoard's Decision, April 26, 1994.) The language of Section I. Article B. of the Pawtucket Subdivision Review Regulations explicitly states that the Planning Board and not the Zoning Board has jurisdiction to subdivide land, which is an integral part of the defendants' development project. Obtaining such approval prior to going before the Board for dimensional relief is a jurisdictional prerequisite. Since the Board rendered its decision without proper jurisdiction, this Court cannot review the propriety of that decision.
Accordingly, this Court hereby remands this case to the Pawtucket Zoning Board of Review to hear the sole issue of subdivision approval, notify all interested parties of said hearing, hear any objections thereto, and amend its findings and decision as needed.
Counsel shall submit the appropriate judgment for entry.