Fecteau, J.
This is an action by which the plaintiffs seek to overturn a decision of the Zoning Board of Appeals of the Town of Northbridge, denying their application for a variance from the condition of a special permit for a “retreat lot” granted in 1994. In addition, they seek a judgment that declares that they have the right to apply to subdivide the parcel for which they obtained approval of a special permit for a retreat lot, notwithstanding a by-law prohibition against such application.
The matter came on for trial, before me, sitting without jury, on November 12, 2004. The parties submitted the controversy on an agreed statement of facts and memoranda of law. After hearing the arguments of the parties, the matter was then taken under advisement. Findings of fact and rulings of law follow.
1. The plaintiffs, John P. and Kirstie R. Miersma, husband and wife, reside at 288 Goldthwaite Road, Northbridge, on approximately 19 acres of land which they acquired in 1992. This land, divided into two adjacent parcels, has approximately 40 feet of frontage on Goldthwaite Road. It is within the R-1 (residential-one) zoning district according to the zoning by-law of the Town of Northbridge. As this land is not serviced by a public sewer system, the minimum dimensional requirements are for at least 40,000 square feet of area and 200 feet of frontage.
2. The zoning by-law of the town also contains a provision for the potential approval and utilization of certain “pork-chop” shaped lots, typically large areas of backland with narrow and deep strips of frontage, called “retreat lots.”[4] The plaintiffs’ parcel contained all of the minimum prerequisites for such consideration and was granted such approval upon application for special permit submitted by the plaintiffs in July 1994. A particular “finding” upon which the grant of approval was “predicated” was that “said lot will not be further subdivided." The plaintiffs were then authorized to construct a single-family home, which they proceeded to do and in which they presently reside.
3. Notwithstanding the by-law restriction and special permit finding against further subdivision of a “retreat lot,”[5] the plaintiffs decided in February 1997 to attempt to subdivide their land into 9 houselots, including the lot on which their house was built, and utilizing the narrow, 40 ft. wide strip that provided them the minimum frontage necessary for consideration as a retreat lot, as the opening of the subdivision by a road along the strip. In order to seek approval, they first applied, in May 1997, for a variance from the restriction posed by the bylaw’s prohibition against further subdivision from the defendant Zoning Board of Appeals. The plaintiffs’ petition was denied in July 1997. This case followed.
4. The plaintiffs contend that once the proposed subdivision was approved, there would be no further need for the special permit for a retreat lot since all lots in the subdivision have been planned to allow for *86 each proposed lot to be fully-compliant with the zoning by-law without any need for further variance.

DISCUSSION

While the plaintiffs have brought this case to the Court by the vehicle of an appeal from the denial of a variance, their argument appears largely directed towards obtaining a judgment that declares their right to subdivide their property. The case or controversy that exists between the parties concerns the right of the plaintiffs to attempt to subdivide their property, given their acceptance of a special permit, taking advantage of the town’s “retreat lot” by-law that allowed them to build their house on a non-conforming lot. However, such approval came at a cost of a restriction against further subdivision. This special permit and the by-law that created the “retreat lot” recognized the utility of allowing some use of backland that had limited frontage on a public way, deemed insufficient per the town’s zoning by-law.
The plaintiffs contend that by permitting the subdivision, which might have been permissible in 1994 were it not for their lack of sufficient funds for the engineering and other costs associated with the planning of a subdivision, each lot that would be created thereby, including their own, and upon approval of the subdivision road, would be fully compliant with the zoning by-law. The plaintiffs argue further that since each lot, including their own, would then have sufficient frontage on an approved way, they would have no further need for the original special permit that was granted in 1994. The defendants respond by saying that it was the plaintiffs themselves who decided upon the course that their land ownership would take them, including the acceptance of the restriction against subdivision and that their current application is nothing more than a belated appeal for removal of the restriction.
Neither party has identified any authority directly on point. The plaintiffs rely upon two decisions, one appellate and one from the land court, for support: Zoning Board of Appeals of Wellesley v. Ardmore Apartments Limited Partnership, 436 Mass. 811 (2002), and Webster et al. v. Town of Bolton et al., Misc. case no. 257429 (July 26, 2001). In the Wellesley case, the defendant developer sought to be relieved of the condition of its comprehensive permit, granted under the provisions of G.L.c. 40B, §§20-23, that required the apartments to be available to low-income tenants. In upholding the restriction, the Court stated that so long as the project is not in compliance with local zoning requirements, it must continue to be subject to the restrictions of the comprehensive permit and statute. The plaintiffs argue from this language that this case provides support for the proposition that once a project is in compliance with zoning by-laws, the conditions of the special permit that had at one time excused compliance may be rescinded.
More closely analogous with the case at bar is Webster et al v. Town of Bolton et al., Misc. case no. 257429 (July 26, 2001). In that case, an amendment to the zoning by-law rendering a formerly non-conforming lot, for which a variance had been granted, compliant with the new zoning by-law, obviated the need for the variance. Id. at 4, 8. Thus, the restriction imposed by the variance against further subdivision was found to be no longer effective. Id. at 11.
The defendants contend that the plaintiffs are not entitled to obtain the relief sought for a number of reasons. First, they argue that this case is nothing more than an untimely appeal from the imposition of the condition against further subdivision. Second, the defendants say that the plaintiffs have not and can not satisfy the burden of proof placed upon them by virtue of G.L.c. 40A, §10, for a variance. Third, the plaintiffs proposed abandonment of the special permit is a fiction.
With respect to the first point raised by the defendants, this case is clearly not an appeal from the imposition of the by-law restriction against further subdivision as a condition on the grant of a special permit, late or otherwise. The conditions which affect the plaintiffs have clearly changed, notwithstanding their expression of interest in a future subdivision made as early as 1992. For whatever reason, the plaintiffs were not in a position to seek subdivision approval then or in 1994. While neither party has addressed the suitability of this land as a subdivision, as it existed in 1994 prior to the construction of their house, I infer that there were no impediments, other than finances, to the plaintiffs seeking to subdivide it in some form at that time, and that it was a viable option for them, at the time they applied for the special permit for their use of the parcel as a retreat lot for a single dwelling. In any event, the plaintiffs took advantage of the special permit and constructed their home, knowing of and accepting the restriction.
With respect to the second point, the plaintiffs do not even address the typical findings that a zoning board of appeal must make in order to approve a variance. Indeed, a board of appeal may grant a variance only where it “specifically finds that owing to circumstances relating to the . . . shape ... of such land . .. but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the... appellant, and that desirable relief may be granted without . . . substantially derogating from the intent or purpose of such ordinance or by-law.” G.L.c. 40A, §10; see also Warren v. Board of Appeals of Amherst, 383 Mass. 1, 9 (1981). The burden in such cases lies with the party seeking the variance to produce evidence that each of the statutory prerequisites have been met to justify the variance. Warren, 383 Mass, at 9-10. The defendants contend that the plaintiffs have *87 failed to meet their burden on at least two of the statutory requirements: (1) proof that they would suffer substantial hardship as a consequence of literal enforcement of the by-law; and (2) the grant of the variance would not substantially derogate from the intent or purpose of the by-law or special permit.
As to the first element, the defendants initially argue that there can be no “substantial hardship” because the land in dispute is already being put to a conforming use. Hardship is typically defined as “not being able reasonably to use the property for the purposes, or in the manner, allowed by the municipal zoning requirements.” Healy, Massachusetts Zoning Manual at 9-13 (1989). Under this standard, all of the relevant factors “when taken together, must indicate that the plight of the premises is unique in that [it] cannot be put reasonably to a conforming use.” Brackett v. Board of Appeals of Boston, 311 Mass. 52, 60 (1942). In the instant case, the plaintiffs have readily admitted that the subject property is supporting their single-family residence, a permitted use under both the by-law and the plaintiffs’ special permit. Thus, the plaintiffs’ only apparent hardship involves their inability to realize further financial gain from subdividing the subject parcel. Hardship, however, must relate to the land itself and not to the financial situation of the owner. Paulding v. Bruins, 18 Mass.App.Ct. 707, 711 (1984). “(T]he deprivation of a potential economic advantage to a landowner [does not] qualify as substantial hardship.” Kirkwood v. Board of Appeals of Rockport, 17 Mass.App.Ct. 423, 431 (1984); see also Bruzzese v. Board of Appeals of Hingham, 343 Mass. 421, 424 (1962) (holding that the plaintiffs inability to build a second home on his property in the absence of a variance did not amount to substantial hardship).
The defendants next argue that even if a substantial hardship exists, it is one of the plaintiffs’ own creation. Although there is no “per se” rule that a self-created nonconformity to a lot cannot qualify as a hardship, Shafer v. Zoning Board of Appeals of Scituate, 24 Mass.App.Ct, 966, 967 (1987), there are several instances in which courts have denied the grant of a variance. Tsagronis v. Board of Appeals of Wareham, 415 Mass. 329, 332 (1993) (“[H]ardship is solely due to the failure of the owner of the locus to construct a house on the undersized locus before statutory protections against zoning changes ran out”); Lopes v. Board of Appeals of Fairhaven, 27 Mass.App.Ct. 754, 757 (1989) (noting that landowner purchased less frontage than by-law required and less than their grantor could have conveyed); Arrigo v. Planning Board of Franklin, 12 Mass.App.Ct. 802, 804 (1981) (finding that the owner sold off portions of a large parcel leaving insufficient frontage for remaining lot).
In the case at bar, the plaintiffs applied for and were granted a special permit. A condition of the special permit was that their lot could not be further subdivided. Although the implementation of the condition was clearly at odds with the plaintiffs future plans to subdivide their parcel, they were not without options. Indeed, upon the issuance of the permit, the plaintiffs had at least three viable avenues in which they could have proceeded: (1) accept each of the conditions of the special permit and build their home; (2) appeal the imposition of the restrictive condition on the permit; or (3) allow the permit, and therefore the condition restricting subdivision, to lapse under G.L.c. 40A, §9, par. 14 and apply for a subdivision at a later date.[6] The plaintiffs chose to avail themselves of the immediate benefits of the special permit, and in so doing implicitly agreed to accept each of the conditions of the permit. They may not now, when faced with the opportunity for financial gain, claim substantial hardship when the hardship which they face was borne out of their own creation. Accordingly, I find that the plaintiffs have not sustained their burden on the element of substantial hardship.
As to the second element, the defendants argue that the plaintiffs failed to meet their burden of showing that the grant of the variance would not substantially derogate from the intent and purpose of the by-law or special permit. “[I]n considering whether the use permitted by this variance derogates from the intent and purpose of the zoning by-law . . . the deviation must be substantial . . .” Cavanaugh v. DiFlumera, 9 Mass.App.Ct. 396, 400 (1980). Section 173-18.1 of the Town zoning by-law was enacted for “the purpose of creating reasonable use of backland for residential purposes.” The plaintiffs submit that the subdivision of their property would allow them to make reasonable use of their backland, while also providing the added benefit of bringing the subject parcel into compliance with the by-law. I disagree. The prohibition against further subdivision contained in both the special permit and the by-law evidences the Town’s intent to severely curtail the use of backland. Indeed, by prohibiting further subdivision, the Town effectively limited the use of the backland to one residential structure. The implementation of a nine-parcel development would, therefore, substantially derogate from the purpose of the by-law.
With respect to the third point raised by the defendants, the plaintiffs have failed to show that they no longer benefit from the special permit and that it should, therefore, no longer be in force and effect. In support of their abandonment argument, the plaintiffs rely on Webster et al and Wellesley for the proposition that once a subject lot is brought into compliance with the requirements of the relevant by-law, the conditions of an applicable variance or special permit are no longer enforceable. The facts of the Webster et al decision, however, are clearly distinguishable from those of the case at hand. In Webster et al. a subsequent amendment to the zoning by-law rendered the plaintiffs formerly non-conforming lot, for which the *88 plaintiff had obtained a variance from frontage requirements, not only compliant with the town by-law, as amended, but also one which would support further division due to a reduction in minimum frontage, so long as other conditions were met. Webster et al., Misc. case no. 257429 at 4, 8. As such, the court found that a condition against subdivision contained in the plaintiffs variance was made, by virtue of legislative action in an amendment to the zoning by-law, “in essence, moot.” Id. at 11. It is also unclear from a reading of Webster whether the lots proposed by the plaintiffs therein had frontage, albeit reduced from that required by the original by-law but permitted under the amendment, on existing public ways, rather than necessitate full subdivision approval process including the approval of a subdivision road, which may constitute a further distinction from the case at bar. In the instant case, the plaintiffs are still reliant on the special permit.[7] Indeed, absent the benefit of the special permit, the plaintiffs’ house would rest on a nonconforming lot, and it would remain so unless and until the municipality gave approval to the subdivision and also accepted the subdivision road. Therefore, unlike in Webster et al, there is no plausible reason to set aside the condition of the special permit. Furthermore, the parties have not provided, nor has the court located any legal authority which gives support to the undermining of a Board-ordered and legislatively enacted condition under similar circumstances, in effect granting through a back door what is unavailable through the front, for no reason apparent other than to allow a party to obtain a financial gain through the subdivision of their property. Accordingly, I find that the plaintiffs are not entitled to apply to further subdivide their land.

ORDER FOR JUDGMENT

For the foregoing reasons, a judgment in favor of the defendants shall enter in which it is hereby ORDERED that the plaintiffs are not statutorily entitled to a variance under Count I of their complaint. As to Count II of the plaintiffs’ complaint, a judgment shall enter that DECLARES that the plaintiffs are not entitled to apply to further subdivide their land.

See Article V, Section 173-18.1. of the zoning by-law of the Town of Northbridge.

Suhsection H of Section 173-18.1.

G.L.c. 40A, §9 provides in relevant part:
Zoning ordinances or by-laws shall provide that a special permit granted under this section shall lapse within a specified period of time, not more than two years, ... if a substantial use thereof has not sooner commenced except for good cause or, in the case of permit for constmction, if construction has not begun by such date except for good cause.

Thus, even if the holding in Wellesley were extended as the plaintiffs argue, it would not be applicable to the facts of this case.